# Curry *versus* Scott.

1. A corporation was created with a defined capital only part of which was subscribed; the directors had power to receive subscriptions and issue certificates for the untaken stock, and the holders became stockholders and entitled to equal rights with the original stockholders.

2. If a stockholder has not paid his subscription in full, he owes for what is unpaid, but he is none the less a shareholder.

3. An old stockholder's right to subscribe to the untaken stock is not superior to the right of one who owned no stock.

4. Reese *v.* The Montgomery County Bank, 7 Casey 78, explained.

5. An Act of Assembly authorizing the issue of preferred stock, if accepted by the stockholders, authorizes such issue by the directors, although individual stockholders may oppose it.

6. The legislature may confer enlarged powers upon the managers of a corporation with the assent of the shareholders, and no one stockholder, by refusing his assent, can hinder the exercise of the enlarged powers.

February 8th 1867.	Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

This was a bill in equity, filed in the Supreme Court, June 12th 1866, by William C. Curry against William Scott, John Van McCollum, John P. Vincent, John Hearn, John F. Tracy, Milton Courtright and the Erie and Pittsburg Railroad Company.

By an act passed the 1st day of April 1858, John A. Tracy and six others were incorporated as the Erie & Pittsburg Railroad Company, subject to the provisions of the General Railroad Law of February 19th 1849. The capital stock was to consist of

[Curry v. Scott.]

20,000 shares of $50 each, with liberty, by a vote of the stockholders, to increase it to 50,000 shares.

Up to February 10th 1865 there had been issued 12,540 shares of stock, fully paid up, of which the complainant owned 15 shares, leaving 7460 shares not issued. On that day a law was passed authorizing the "directors to receive subscription for all or any part of the unsubscribed stock of said company, under such regulations as to time and manner of such subscription as said directors shall prescribe—any law or usage to the contrary notwithstanding; and the subscribers to said stock shall have the same rights in said company as if they had been original subscribers thereto: Provided, That any person subscribing therefor, shall pay, at the time of subscribing, five dollars on each share so subscribed."

On the 21st of March 1865 another act was passed, authorizing the directors, for the purpose of purchasing rolling-stock, &c., " to issue a preferred stock to an amount not exceeding five hundred thousand dollars, on which the holder shall be entitled to receive, at all events, such interest or dividends, not exceeding eight per cent. per annum, as the board of directors of said company shall fix and determine at the time of issuing of said stock, with the right of the holders thereof to vote at all elections and receive a share of all dividends, over the special rate fixed to said stock, equally with the common stock of said company; and the said board of directors may sell said preferred stock to such person or persons, and for such a price and on such terms, as they shall deem best." This law was passed without the plaintiff's knowledge or approval, and he has always protested against it as unauthorized and void. The directors accepted both acts April 7th 1865.

J. V. McCollum, one of the defendants, subscribed for the remaining stock of the original authorized capital, paid $5 on each share, and certificates were issued to him: all being without the plaintiff's knowledge, and he never ratified it. At an election for directors January 8th 1866, 9050 shares were voted for Preston Metcalf and others for officers, and 10,730 shares, including the 7460 last issued, were voted for William L. Scott and others of the defendants, and other persons; the votes of 7460 shares were objected to by the holders of the 9050 shares, but they were received and counted, and William L. Scott and his associates declared duly elected.

The bill set out these facts, and also averred that the defendants intended to issue the preferred stock, and hypothecate it, and make dividends of 8 per cent. per annum on it; and that a large proportion of the legal stockholders never authorized or consented to the issue of the preferred stock.

The complainant claims that said two acts are fraudulent and

void and not binding on him: and that the subscription of 7460 shares made by McCollum are fraudulent, that the votes given thereon are null and void, and that the elections of Scott and his associates are erroneous, illegal and void, and confer no right to enjoy the same: and prays that the said two Acts of Assembly be declared null and void, and that the 7460 shares of McCollum be decreed to be given up and cancelled, and the election of January 8th 1866 be set aside, &c.

The defendants demurred.

*J. H. Walker*, for demurrer.—Before a law can be decided to be unconstitutional, it must be so clearly so as to leave no doubt upon the subject: Sharpless *v.* The Mayor of Philadelphia, 9 Harris 147, 164; Erie & N. E. Railroad *v.* Casey, 2 Casey 287, 317; Moore *v.* Houston, 3 S. & R. 168, 178; Commonwealth *v.* Smith, 4 Binn. 117, 123; Fletcher *v.* Peck, 6 Cranch 87; Speer *v.* The School Directors, 14 Wright 150; Grey *v.* The Monongahela Nav. Co., 2 W. & S. 156; McKeen *v.* Delaware Div. Canal Co., 13 Wright 424; Mason *v.* Haile, 12 Wheat. 370; Satterlee *v.* Matthewson, 4 Peters 514; Watson *v.* Mercer, 8 Id. 88; Charles River Bridge *v.* Warren Bridge, 11 Id. 420; Providence Bank *v.* Pitman, 4 Id. 414; The R. F. and P. Railroad Co. *v.* The Louisa Railroad, 13 How. 71; Durfee *v.* O. C. & F. Railroad, 5 Allen 244.

The unsubscribed stock in no sense belonged to the original stockholders, and was not held in trust, or for the benefit of the stockholders.

There is some authority tending to establish the doctrine that where the stock of a corporation has been *increased*, such *increase* of stock belongs to the preceding stockholders *pro rata :* Angell & Ames on Corp., §§ 554, 555; Gray *v.* The Portland Bank, 3 Mass. 364. The doctrine of this case was doubted from the first. See note to the case, 2d ed., 3 Mass. 391, and cases cited.

In Reese *v.* Montgomery County Bank, 7 Casey 78, there had been a resolution of the directors that the stock should be divided: Miller *v.* Illinois Cent. Railroad, 24 Barb. 312, 329; Ohio Ins. Co. *v.* Munnemacher, 15 Ind. 294; Lauman *v.* N. Y. & Erie Railroad, 2 Sandford 39.

Beneath the original act of incorporation and the general Railroad Law the board of directors had power to sell the unsubscribed stock.

The stock of a corporation is the means provided for carrying out the object of the incorporation: Miller *v.* The Illinois Cent. Railroad Co. 24 Barb. 312, 329.

Was the sale anything more than a " disposition" of a portion of the property of the company ? or was it any thing else than

[Curry v. Scott.]

an " exercise of a power granted to the corporation ?" Gordon v.
Preston, 1 Watts 385; De Ruyter v. St. Peter's Church, 25
Barb. 375; Hyatt v. McMahon, 3 Comst. 238; Redfield on
Railways 575.

A railroad company is a *quasi* public corporation. The main-
tenance of a railroad is a public purpose. A railroad by the
terms of the General Railroad Law (section 18), is a public high-
way. All such corporations are *quasi* public corporations, and
are certainly so much within legislative control as to enable their
original design to be carried out: Redfield on Railways 13, 92,
421, 496, 621; Irvine v. Turnpike Co., 2 Pa. R. 466; Sharp-
less v. The Mayor, &c., 9 Harris 147, 170; Beekman v. The
S. & S. Railroad, 3 Paige 45; Sedgwick on Stat. & Const. Law
633.

The legislature shall not, by injuriously affecting the *corpora-
tion* within the meaning of the law, affect the corporators: Gray
v. The Monon. Nav. Co., 2 W. & S. 156; Clark v. The Monon.
Nav. Co., 10 Watts 364; The Monon. Nav. Co. v. Coon, 6 Barr
379; Northern Railroad v. Miller, 10 Barb. 282; White v. Syra-
cuse Railroad, 14 Id. 559; Buffalo, &c., Railroad v. Dudley, 4
Kernan 336.

The act was in no sense injurious to the corporation, for it
merely granted it an added power.

A corporation, where the capital is not limited in the charter,
may from time to time issue new shares and even give them a
preference as a mode of borrowing money, where it has power
to borrow on bond and mortgage, as preferred stock is only a
form of mortgage: Redfield on Railways, 593, § 237; Sharpless
v. The Mayor of Philadelphia; Erie and N. E. Railroad *v.*
Casey; Moore v. Houston; Commonwealth v. Smith, *supra;*
Myers v. Irwin, 2 S. & R. 367; Mason v. Haile, Satterlee
v. Matthewson, *supra;* Providence Bank v. Billings, 4 Peters
514; Watson v. Mercer, Charles River Bridge v. Warren Bridge,
The R. F. and P. Railroad Company v. The Louisa Railroad,
*supra;* Irvine v. Turnpike Company, 2 Pa. R. 466; Clark
v. Monon. Nav. Company, 10 Watts 364; Fry's Executor v.
Lexington and B. S. Railroad Company, 2 Met. (Ky.) 314;
Everhart v. The P. and W. C. Railroad, 4 Casey 339; Hyatt
v. McMahon, 25 Barb. 457. So S. P. Railroad v. Thatcher, 1
Kernan 102; Buff. and N. Y. C. Railroad v. Dudley, 4 Id.
336; Crease v. Babcock, 23 Pick. 334; McLaren v. Pennington,
1 Paige 102; Miners' Bank v. The United States, 1 Green.
(Iowa) 561; Johnson v. The Joliet Railroad, 23 Ill. 202.

The corporation then has the power to use or reject the added
powers and privileges. With the exercise of these powers, no
stockholder or court has any right to interfere: The Common-

4 P. F. SMITH—18

[Curry *v.* Scott.]

wealth *v.* The Trustees, 6 S. & R. 508; Smith *v.* Hind, 12 Met. 371; Scott *v.* Depeyster, 1 Edwards 513; Oswego F. B. Company *v.* Fish, 1 Barb. Ch. 547; Case St. Mary's Church, 6 S. & R. 497; Lincoln and K. Bank *v.* Richardson, 1 Greenf. 460.

*B. Grant,* for complainants, contrâ.—By the Act of April 1st 1858 the Erie and Pittsburg Railroad Company came under the provisions of the General Railroad Law of February 19th 1849, Pamph. L. 79 *et seq.*, and to that act must we look for its powers and privileges. We start with the positive declaration of Black, C. J., in Commonwealth *v.* E. and N. E. Railroad Co., 3 Casey 351, that "a doubtful charter does not exist; because whatever is doubtful is decisively certain against the corporation."

Those who hold the stock in the capital first raised have a right to subscribe for and hold the new stock in proportion to their respective shares: Gray *v.* The Portland Bank, 3 Mass. R. 364; Miller *v.* Ill. Cent. Railroad, 24 Barb. 212; Reese *v.* Bank of Montgomery Co., 7 Casey 78.

The Act of February 10th 1865 was an infringement of the rights of the corporators: Angell & Ames on Corp. § 81, 31; The People *v.* Wren, 4 Scam. (Ill.) R. 273; Sage *v.* Dillard, 15 B. Mon. 340; New Orleans, Jackson and Great Northern Railroad Co. *v.* Harris, 27 Miss. 517; Railroad Co. *v.* Croswell, 5 Hill 385; Stevens *v.* Rutland and Burlington Railroad Co., 1 Am. Law Reg. 159; Wales *v.* Stetson, 2 Mass. R. 146.

An act beyond the scope of the constitution of the company requires the consent of all the members: Burmeister *v.* Norris, 8 Eng. L. & Eq. 487; Redfield on Railways 13, n. 7; General Railroad Law of February 19th 1849, § 20, Purd. 838, pl. 11, Pamph. L. 83.

In partnerships and joint stock associations the majority cannot change or alter their fundamental articles of copartnership or association against the will of the minority, however small, unless there be an express or implied provision in the articles themselves that they may do it: Br. Eq. 186, § 191; 1 Am. Law Reg. 156; Attorney-General *v.* Norwich, 9 Eng. L. and E. R. 93; Aagar *v.* Canal Co., Cooper's Eq. R. 77; Dan. Nav. Co. *v.* Mid. Railway Co., 1 Railway Cases 153-4.

The opinion of the court was delivered, February 25th 1867, by STRONG, J.—The objects sought to be attained by the bill are mainly such as are attainable by a writ of quo warranto, and it might perhaps be questioned whether they can be secured in a court of equity. A portion of the relief sought, however, is such as a court of law cannot give, and it is not assigned as one of the grounds of the demurrer that the plaintiff has an adequate remedy

[Curry v. Scott.]

at law.   We proceed, therefore, to inquire whether the bill exhibits a case entitling the plaintiff to relief.

It avers in substance that the Erie and Pittsburg Railroad Company, of which the plaintiff is a stockholder, having a portion of its authorized capital stock undisposed of, prescribed a time and manner for subscription of that which had previously remained untaken; that afterwards, and, so far as it appears, at the time and in the manner prescribed, John Van McCullom, one of the defendants, subscribed for all the stock that remained untaken, to wit, 7460 shares; that the company received his subscription, that he then paid on account of each share $5; that the company issued certificates of stock for the stock thus taken; and that at the annual election next succeeding he was permitted to vote such shares.   It is not averred that there was any fraud in the subscription or that the plaintiff or any other person was denied the privilege of subscribing or that the stock taken by McCullom was worth more than its par value at which he took it, but the bill rests upon the assumption that the directors of the company had no power thus to dispose of their untaken stock, and that McCullom could not thus acquire the rights of a stockholder to vote at an election.

The bill also avers that an Act of Assembly was passed on the 10th day of February 1865, by which it was enacted that the board of directors of the Erie and Pittsburg Railroad Company be authorized to receive subscriptions for all or any part of the unsubscribed stock of said company under such regulations as to time and manner of such subscription as said directors should prescribe, any law or usage to the contrary notwithstanding, and that the subscribers to said stock should have the same rights in said company as if they had been original subscribers thereto. Provided, that any person subscribing therefor should pay at the time of subscribing $5 on each share so subscribed.   But the plaintiff insists that this act is of no force because it is an unwarranted infringement upon the rights of those who were stockholders at the time of its passage.   And much of the argument has been expended in assailing and sustaining the validity of the enactment. We are of opinion, however, that the discussion was unnecessary, for without the act the directors of the company had power to receive subscriptions for all the untaken stock and issue certificates therefor.   And the moment this was done the holder became a stockholder and entitled to the rights of a stockholder.   The company was incorporated without any appointment of commissioners to receive subscriptions for stock, but it was enacted that the stock should consist of 20,000 shares of $50 each.   It was not required that any portion of it should be subscribed or paid in before the organization of the company, but the corporation was endowed at once with all the rights and privileges conferred

[*Curry v. Scott.*]

by the General Railroad Act and its supplements. Of course subscriptions for stock were authorized after the organization until the authorized amount had been taken. And what else do new subscribers become than stockholders having equal rights with others? The law authorizes no distinction between the rights of one stockholder and those of another. If one has not paid his subscription in full he is a debtor for so much as remains unpaid, but he is none the less a shareholder.

It is insisted, however, that the directors had no right to allow McCullom to subscribe and thus obtain the untaken stock because it belonged to the old stockholders, and it should have been sold for their benefit, or they should have been allowed to take it in proportion to the shares they held. It would be a sufficient answer to this to say the bill does not allege that the plaintiff or any of the old stockholders offered or that they are willing to take it at par, nor does it allege that the stock could have been sold at a higher price than par. It therefore sets forth nothing that is injurious to the complainant. But when it is said that the untaken stock belonged to the old stockholders, more is meant than can be admitted. In a certain sense the assertion is true. But it is not to be admitted that an old stockholder had a right to subscribe to the untaken stock superior to the right of one who owned no stock. If this were so a first subscriber might compel all the remaining untaken stock to be sold, or, at least, would have a right to exclude any other person from subscribing.

The cases upon which the plaintiff relies are inapplicable to the case now in hand. In Gray v. The Portland Bank, 3 Mass. 364, it was held that when a banking company had been incorporated with a capital not less than one sum and not greater than another and had commenced business with the smaller capital, and afterwards voted to increase to the largest, those who held the stock in the capital first raised had a prior right to subscribe to the new stock. The case was really decided by two judges of a court consisting of five, but assuming its ruling to be sound law, it is unlike the case we have. Here is no increase of capital but a filling up of one both authorized and required. This is a substantial difference. So the case of Reese v. The Bank of Montgomery County, 7 Casey 78, decides nothing more than that untaken stock is held by the corporation in trust for the corporators, and must be disposed of for the benefit of all; that it cannot be disposed of unequally to the corporators, and that if so disposed of, each corporator injured may have his action against the corporation. Neither of these cases decides that a stockholder has any greater right than a stranger to subscribe to original stock untaken. And we are unable to see why the directors of the Erie and Pittsburg Railroad could not permit McCullom to subscribe for all the untaken stock, why they could not issue certificates to him when he

[Curry *v.* Scott.]

had subscribed, and why, having become thus a stockholder, he could not vote at an election. The Act of 1865 was then unnecessary, it was but a re-enactment of that which had been previously enacted.

The bill also assails another Act of Assembly, passed on the 21st day of March 1865, by which the board of directors of the company was authorized to issue preferred stock. It avers that the plaintiff never agreed to any such issue, that the act was procured without his assent and that he did not know of its passage until months after it had been enacted. It also charges that it is the intention of the company to issue such preferred stock. But why this is illegal or how it is injurious to the plaintiff the bill does not show. Doubtless the Act of Assembly did not effect an alteration in the charter until accepted, but the bill does not deny that it was accepted by the stockholders. It admits it was by the board of directors. Clearly if accepted by the stockholders, the directors are authorized to issue a preferred stock, and their doing so is no wrong to the complainant, though he may be opposed to their action. It is not to be questioned that the legislature may confer enlarged powers upon the managers of a corporation with the assent of the shareholders, and that no one stockholder, by refusing his assent, can hinder the exercise of the enlarged powers.

From what has been said it will be seen that, in our opinion, the plaintiff's bill exhibits no case calling upon a court of equity to grant him relief. The demurrer must, therefore, be sustained and the bill dismissed.