## Multiple Insurance

KEITEL, Deputy Attorney General, July 29, 1949.— We have your request to be advised concerning certain questions which have arisen under the provisions of the Act of April 20, 1949, P. L. 620, which adds to section 202 of The Insurance Company Law of May 17, 1921, P. L. 682, 40 PS §382, a new subdivision (*f*), to read as follows:

"(f) Domestic stock and mutual insurance companies, other than life or title, and, if their charters permit, foreign companies, may transact any or all of the kinds of insurance included in subdivisions (b) and (c) of this section upon compliance with all of the financial and other requirements prescribed by the laws of this Commonwealth for fire, marine, fire and marine, and casualty insurance companies transacting such kinds of insurance. Any domestic mutual fire insurance company which takes advantage of the provisions of this subsection (f) shall not be required to license any of its agents."

This new subdivision will become effective September 1, 1949. The existing subdivisions of section 202 set forth the purposes for which domestic insurance companies may be incorporated, and maintain the historical distinctions between the three general classes of insurance, i.e., life, casualty and fire insurance. Subdivision (a) relates to life insurance, and is not pertinent to this opinion. Subdivision (b) contains the purposes of fire, marine, and fire and marine in-

surance companies, hereinafter referred to as fire insurance companies for the sake of brevity. Subdivision (*c*) enumerates the 13 fields of casualty insurance.

In the past, the legislature has adhered strictly to a policy of keeping separate the three classes of insurance companies, so that a fire insurance company could not write casualty insurance, nor could a casualty insurance company write fire insurance. See Mutual Insurance Company Charter Amendment, 67 D. & C. 451.

In enacting the Act of April 20, 1949, the legislature has now broken down the distinction between fire insurance companies and casualty insurance companies to the extent of permitting either class to transact any kinds of insurance permissible for the other class.

In your first inquiry, you ask whether it is necessary for insurance companies to amend their charters before they may be authorized to transact a different class of insurance, as authorized by the Act of April 20, 1949.

It is unlikely that the charter of any domestic fire or casualty insurance company would be sufficiently broad to authorize such company to write the multiple lines of insurance permitted by the Act of April 20, 1949, because any charter powers to write insurance of a class different from the class for which the company was incorporated would have been beyond the scope of the corporation laws of this Commonwealth. On the other hand, it would not be unusual for a casualty insurance company to possess charter powers broad enough to write all 13 fields of casualty coverage, even though the company actually transacts only a few kinds of such insurance. In such a case, it would be necessary to amend the charter of the casualty company only if it wished to transact fire insurance.

Article XVI, sec. 6, of the Pennsylvania Constitution provides that:

"No corporation shall engage in any business other than that expressly authorized in its charter, . . ."

Article XVI, sec. 10, authorizes the legislature to "alter, revoke or annul" corporation charters whenever in the opinion of the legislature "it may be injurious to the citizens of this Commonwealth, in such manner, however, that *no injustice shall be done to the corporators.*" (Italics supplied.) This provision was intended to permit the legislature to alter or annul a corporation charter without impairing the obligation of contracts under the Constitution of the United States. Cf. Dartmouth College v. Woodward, 17 U. S. (4 Wheat.) 518, 636 (1819).

These two provisions in the Pennsylvania Constitution establish the axiomatic principles that a corporation charter must reveal the business in which the corporation is authorized to engage, and that such business cannot be altered by the legislature if injustice will result to the corporators, i. e., the shareholders.

In view of the mandate contained in article XVI, sec. 6, of our Constitution, we conclude that it is necessary for any casualty insurance company to amend its charter before it may engage in the business of fire insurance; similarly, the charter of a fire insurance company must be amended before it may engage in the business of casualty insurance.

The enactment of the Act of April 20, 1949, did not ipso facto or ipso jure achieve the necessary amendment to the charter of such an insurance company. The proper procedure is found in section 322 of The Insurance Company Law of 1921, 40 PS §445, which permits an insurance company to amend its charter so as to change its corporate purposes, and such an amendment may be obtained only after the assent of

two thirds of the stockholders or members of the corporation.

Prior to the evolution of general corporation laws, corporate charters were granted by special acts of assembly, and amendments thereto were enacted in the same manner. In such cases, it was necessary to obtain the consent of the shareholders after such an amendment was passed by the legislature, and such an amendment was held ineffective where the shareholders did not accept it: Commonwealth ex rel Claghorn v. Cullen et al., 13 Pa. 132 (1850).

In Curry v. Scott, 54 Pa. 270, 277 (1867), the court said:

". . . It is not to be questioned that the legislature may confer enlarged powers upon the managers of a corporation *with the assent of the shareholders, . . .*" (Italics supplied.)

At common law, the unanimous approval of the shareholders was necessary where the amendment to the charter basically altered the corporate structure: see 7 Fletcher Cyclopedia Corporations (perm. ed.) sec. 3726, and also Ashton v. Burbank, Fed. Cas. No. 582 (1873), where the court found that the change in a charter whereby the life and accident insurance company was authorized to transact fire, marine, and inland insurance was "an organic change of such a radical character" as to discharge stock subscribers from any obligation to pay.

The foregoing authorities make the approval by the shareholders a prerequisite to a fundamental change in a corporate charter, and indicate clearly that the legislature does not have the power to alter the basic contract rights between the shareholder and the corporation, so as to change the class of business engaged in by the corporation. Thus, the Act of April 20, 1949, cannot be construed as automatically amending the charters of fire or casualty insurance companies.

Even if the act were construed as a direct amendment to the charter of such a company, it would be unconstitutional to the extent that injustice would result to the shareholders. For example, the organic change resulting from the entry of a casualty insurance company into the fire insurance field, without the consent of the shareholders, would seem to result in an injustice to the shareholders.

Finally, we are of the opinion that the Act of April 20, 1949, cannot be construed as a direct amendment to the charter of an insurance company, even though it is accepted or approved by the shareholders. The authorities cited above with respect to charters and amendments thereto granted by special acts, do not pertain to general corporation statutes, where the consent of the incorporators or of the shareholders is obtained *prior* to the filing of the articles of incorporation, or articles of amendment, as the case may be. If a corporation desires to engage in the multiple line coverage permitted by the Act of April 20, 1949, it should amend its charter under the provisions of section 322 of The Insurance Company Law, cited supra, and thus obtain the necessary consent of two thirds of its shareholders or members in advance.

It may be noted parenthetically that foreign insurance companies may transact multiple lines of insurance in Pennsylvania under the Act of April 20, 1949, only "if their charters permit". Furthermore, the provisions of the act would not apply to any domestic insurance companies incorporated prior to October 13, 1857, which have not accepted the provisions of The Insurance Company Law of 1921, or are not subject thereto.

Accordingly, in answer to your first question, we conclude that it will be necessary for domestic casualty and fire insurance companies to amend their charters before they may be authorized to transact any kinds

of insurance permitted by the Act of April 20, 1949, which are not authorized by their charters.

You next inquire as to the procedure to be followed where an amendment to the charter of the insurance company is unnecessary.

Any casualty insurance company now engaged in one of the 13 casualty coverages which hereafter desires to engage in other casualty coverages, would not be required to amend its charter, if its charter provisions were sufficiently broad to permit the additional coverages within the casualty class. The same observation should be made as to fire insurance companies.

Nevertheless, we feel that some fundamental rights of stockholders or members may be affected whenever an insurance company expands its present business to other coverages within the class presently permitted by its charter. For this purpose, you may require evidence of the approval by the stockholders or members of any radical or organic change in the lines of insurance business to be transacted by the insurance company, prior to the granting of a new certificate of authority, as required by the Act of June 4, 1937, P. L. 1640, 40 PS §47a.

In your third query, you ask whether domestic mutual insurance companies seeking to engage in multiple line insurance under the authority of the Act of April 20, 1949, supra, must meet the minimum financial requirements for mutual companies other than mutual life and title insurance companies contained in section 206(e) of The Insurance Company Law of 1921, 40 PS §386, as amended by the Acts of July 1, 1937, P. L. 2527 and 2528, the composite of which reads as follows:

"(e) Mutual companies, other than mutual life companies, and title insurance companies, hereafter organized under this act, shall comply with the following conditions:

"(1) Each such company shall hold bona fide applications for insurance upon which it shall issue simultaneously, or it shall have in force, at least twenty (20) policies to at least twenty (20) members, for the same kind of insurance, upon not less than two hundred (200) separate risks, each within the maximum single risk described herein.

"(2) The 'maximum single risk' shall not exceed three times the average risk, or one per centum (1%) of the insurance in force, whichever is the greater.

"(3) It shall have collected a cash premium upon each application, which premium shall be held in cash or securities in which insurance companies are authorized to invest; and shall be equal, in case of fire insurance, to not less than twice the maximum single risk assumed subject to one fire, nor less than twenty-five thousand dollars ($25,000); and, in any other kind of insurance, to not less than five times the maximum single risk assumed nor less than fifty thousand dollars ($50,000); and, in case of workmen's compensation insurance, to not less than one hundred thousand dollars.

"(4) For the purpose of transacting employer's liability and workmen's compensation insurance, the application shall cover not less than five thousand (5,000) employes, each such employe being considered a separate risk for determining the maximum single risk."

The Act of April 20, 1949, quoted supra, imposes as a condition precedent the ". . . compliance with all of the financial and other requirements prescribed by the laws of this Commonwealth for . . . insurance companies transacting such kinds of insurance. . . ."

An analysis of the first paragraph of this subsection indicates that the financial requirements relate to the "same kind of insurance", and would thus provide for duplicate financial requirements when writing other "kinds" of insurance. This analysis is con-

firmed by the reference in paragraph (3) to fire insurance and workmen's compensation insurance, and in paragraph (4) to employer's liability and workmen's compensation insurance.

Since the Act of April 20, 1949, requires compliance with all financial requirements prescribed by law, presumably the legislature was referring, in the case of mutual companies, to the requirements of section 206(e), supra.

Therefore, we are of the opinion that a domestic mutual fire or casualty insurance company seeking to write any new kinds of insurance pursuant to the authority of the Act of April 20, 1949, must meet the minimum financial requirements set forth in section 206(e) of The Insurance Company Law of 1921, as amended.

In conclusion, you are advised that:

1. It will be necessary for domestic fire and casualty insurance companies to amend their charters before they may be authorized by you to transact multiple lines of insurance, as provided in section 202(f) of The Insurance Company Law of 1921, as amended by the Act of April 20, 1949, P. L. 620.

2. Where, by reason of the broad provisions of its charter, it is unnecessary for such an insurance company to amend its charter to take advantage of the provisions of the said Act of April 20, 1949, you may require evidence of the approval by the stockholders or members of any radical or organic change in the lines of insurance business to be transacted by the company.

3. A domestic mutual company engaged in writing fire or casualty insurance must comply with the financial requirements for such companies contained in section 206(e) of The Insurance Company Law of 1921 before being authorized to write multiple lines of insurance pursuant to the Act of April 20, 1949.