THE UNION HOTEL COMPANY, Appellant, v. THOMPSON HERSEE, Respondent.

Where by the charter of a corporation the right is reserved to the Legislature to alter or repeal it, a subscriber to its capital stock is not discharged from his subscription by a subsequent amendment to the charter, but will be regarded as having consented to the change.

By plaintiff's charter (chap. 432, Laws of 1871) it was provided that the franchises thereby granted should become null and void unless it should begin the construction of a hotel within two years after the passage of the act; it was also made "subject to the liabilities and restrictions contained in certain provisions of the Revised Statutes," among others to the provision (1 R. S., 600, § 8) declaring that the charter of every corporation thereafter "granted by the Legislature shall be subject to alteration, suspension or repeal, in the discretion of the Legislature." Defendant subscribed for fifty shares of the capital stock. Subsequently, but before the expiration of the two years, the charter was amended (chap. 123, Laws of 1873) by extending the time for beginning the construction of the hotel five years. The work of construction was not commenced within the two years, and soon after defendant gave notice to plaintiff that he withdrew his subscription. In an action upon the subscription, held, that the said provision of the Revised Statutes was to be considered as incorporated in the charter, and as part of defendant's contract; and that the subscription was not defeated by the amendment.

In re B. W. and N. R. Co. (73 N. Y., 245), distinguished.

Defendant's subscription was made on the condition that "the sum of $200,000 be subscribed by the citizens of Buffalo." The requisite amount was subscribed; some of the subscriptions were in firm names written by one partner; one was in the name of a corporation; it appeared that this was made by authority of the directors of the corporation, and with the assent of all the stockholders. Upon these sub-

scriptions payments were made in compliance with calls made upon the subscribers. *Held*, that the evidence established *prima facie* the validity of these subscriptions ; that, in any event, the payment upon each was a ratification thereof.

One of the subscribers had, at the time of his subscription, his domicile in Batavia, but boarded in Buffalo, was engaged in business and spent nearly all of his time there. *Held*, that he was a citizen of Buffalo within the meaning of the subscription papers.

nother subscription was in the name of "B. & S. M. Spencer." B. Spencer, who signed, was a resident of Buffalo    *Held*, that the subscription was within the terms of the contract ; and this, although there was no such firm, or B , signed without authority, as in either event he would be liable as upon his individual subscription.

*Un. H. Co.* v. *Hersee* (15 Hun, 371), reversed.

(Argued December 15, 1879 ; decided January 13, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, setting aside a verdict in favor of plaintiff, and granting a new trial. (Reported below, 15 Hun, 371.)

This action was brought upon a subscription by defendant to plaintiff's capital stock, to recover certain calls or assessments upon said subscription.

The facts appear sufficiently in the opinion.

*Sherman S. Rogers*, for appellant. Mr. Richmond was a citizen of Buffalo, within the meaning of the subscription. (§ 5, tit 2, art. 1, chap. 13, pt. 1; R. E. [Edm. ed.], 362 [m. p.], 390; *Bell* v. *Pierce*, 51 N. Y., 12.) The lead company was estopped from denying its liability, and this estoppel made its subscription valid and binding. (*Whitney Arms Co.* v. *Barlow*, 63 N. Y., 62.) If the lead company was not bound as a corporation, its stockholders were bound individually. (Story on Agency, § 280.) The company was a citizen within the meaning of the subscription. (*Cook* v. *State Nat. Bank*, 52 N. Y., 110.) Defendant having intrusted to the corporators to ascertain who were citizens and stockholders is bound by their decision. (*Penobscot R. R. Co* v. *White*, 41 Me., 512, 521.) The Legislature had the right to pass the act of March 24, 1873 (chap. 123),

amending plaintiff's charter. (*S. and S. Plank Road Co.* v. *Thatcher*, 1 Kern., 102; *B. and N. Y. City R. R. Co.* v. *Dudley*, 14 N. Y., 336.) The effect of not commencing construction within the statutory time rendered the franchise liable to a forfeiture which could be enforced only by the State. (A. & A. on Corps., §§ 77, note 1.) If a forfeiture took place before trial this case is not affected, as it is provided by 2 Revised Statutes (Cothran's ed.), 392, section eleven, that a suit like the present shall not abate. (*Phol. W. Co.* v. *Badger*, 67 N. Y., 294.)

*George Cleveland*, for respondent. The subscription by the lead company was in excess of its corporate powers and invalid. (*McCullough* v. *Moss*, 5 Den., 567.) The construction of the hotel not having been commenced within the time fixed by plaintiff's charter it should have been nonsuited. (*People* v. *Manhattan Bank*, 9 Wend., 373; *In re B'klyn, W. and N. R. R. Co.*, 72 N. Y., 245; *Hartf. and N. H. R. R. Co.* v. *Croswell*, 3 Hill, 383; *Buff. and N. Y. C. R. R. Co.* v. *Dudley*, 2 Kern., 336, 355.) If the act of March 24, 1873 (chap. 123) did extend the time to commence five years, if nothing has yet been done towards it, plaintiff's corporate powers have ceased, and it has no standing in court. (*Britton* v. *Wickwire*, 54 N. Y., 226; *In re B'klyn, etc., R. R. Co.*, 72 id., 245; *Sturgis* v. *Drew*, 11 Hun, 136; affid. in Ct. of App.; *McCulloch* v. *Norwood*, 56 N. Y., 562.)

DANFORTH, J. The plaintiff was incorporated by an act of the Legislature, passed April 12, 1871, for the purpose of constructing and carrying on a hotel in the city of Buffalo. By this statute its capital stock was fixed at $200,000. The business was to be managed by a board of directors, who were clothed with the powers usual in such cases, and among others that of "calling in subscriptions" to the stock of the company. It was made "subject to the liabilities and restrictions contained in title III, chapter

18, part 1 of the Revised Statutes;" and it is declared by section seven of the act of incorporation that "the franchise thereby granted shall become null and void," unless "the corporation shall commence the work of constructing the hotel within two years from the passage of this act, and complete the same within four years from the time of commencing the construction thereof." Under date of April, 1871, the defendant subscribed for fifty shares of the capital stock of the company, at $100 per share, "provided the sum of $200,000 be subscribed by the citizens of Buffalo." On the 24th of March, 1873, section seven of the statute above referred to was amended so as to give "five" instead of two years within which to commence the construction of the hotel. On the 21st of May, 1873, the defendant gave notice to the plaintiff that he withdrew his name as a subscriber to the capital stock of the company. Subsequently the board of directors made two calls for portions of the subscriptions, amounting, in the defendant's case, to $1,500; and these not being paid, this action was commenced on the 9th of February, 1876, for their recovery. Upon the trial it was conceded "that the plaintiff did not commence the work of constructing the hotel within two years from the passage of the act of incorporation," and questions were raised as to whether the condition upon which the defendant's subscription was made had been complied with. Those will be more specially stated hereinafter; but at the close of the case the defendant's counsel moved for a nonsuit on various grounds, in substance, first: "That the defendant was discharged from his subscription by the failure of the company to commence the work of constructing the hotel and completing it within the time prescribed in the first act of the Legislature incorporating the plaintiff;" second: "That the plaintiff had not proved that the subscribers to the capital stock of the company were citizens of Buffalo or residents of that city." A nonsuit was denied. The defendant asked to go to the jury on the question of the residence of the subscribers to the stock. This also was denied. The rulings were excepted

to by the defendant. The trial court ordered a verdict for the plaintiff and directed the exceptions to be heard in the first instance at the General Term. It was there held that the nonsuit should have been granted upon the ground first stated; and also that the court should have complied with defendant's request to go to the jury. The verdict was therefore set aside and a new trial granted. In both particulars I think the learned court erred, and that the appeal now before us must be sustained. As to the first proposition, the General Term held, and such is the claim of the learned counsel for the respondent, "that the defendant's subscription was upon the terms and conditions provided by the act (of 1871) and the subscription paper; that the amendment passed in 1873 in no manner affected it," because it "was in the nature of a contract, and could not be altered without his assent." The premises may be conceded, but not the conclusion. For the act of 1871 by direct reference subjects the corporation to the liabilities imposed by the provisions of the Revised Statutes (*supra*); and section eight of that chapter declares that the charter of every corporation thereafter granted "shall be subject to alteration, supervision and repeal, in the discretion of the Legislature." The effect is the same as if this provision had been inserted in the plaintiff's charter. It is thus a part of the defendant's, contract, and it is impossible to say that the alteration made by the amendment of 1873 was without his assent. Nor is the change organic. It leaves the end or purpose of the corporation as it is declared in the statute of 1871. It simply enlarges the time for its execution. It was held in *Agricultural Branch R. R. Co.* v. *Fitch Winchester* (13 Allen, 29), that subscriptions to the capital stock of a railroad company will not be defeated by a subsequent amendment of the charter extending the time for the completion of the road; and so in *Meadow Dam Co.* v. *Gray* (30 Me., 547). Both of these cases were decided under a special act incorporating into it by reference the provisions of a general statute to which all corporations were declared liable. In such cases,

subscribers to the stock of corporations whose charters are liable to be so changed or altered must be regarded as consenting to the change. (*The Saratoga and Schenectady R. R. Co.* v. *Thatcher*, 11 N. Y., 102; *The Buffalo and N. Y. City R. R. Co.* v. *Dudley*, 14 id., 336.) In "*re Lee & Co.'s Bank*" (21 id., 1), the same question is discussed, under a clause in the charter reserving to the Legislature a right to alter and repeal it, and the conclusion reached that the subscriber to the capital stock of a company whose charter was amended was not thereby discharged from his subscription, but must be deemed a party thereto. I think, therefore, upon principle and authority, that the omission on the part of the plaintiff to comply with the terms of section seven in the act of 1871, as enacted, is not available to the defendant as an answer to the plaintiff's claim. The *Matter of B. W. and N. Railway Co.* (72 N. Y., 245), has no bearing upon the present case. The time within which, under its charter, original or amended, it could do any act, had expired before it undertook the proceeding which was under review. It was then an extinct corporation. In the case before us the time was extended before the expiration of the two years given by the act of 1871, and this action commenced before the expiration of that fixed by the act of 1873. Nor can the notice given by the defendant avail him. No such easy method of escape from liability is provided by the statute.

We are next to consider the effect of the subscription made by the defendant. His undertaking was not absolute, but upon condition, first, that $200,000 should be subscribed, and second, that this subscription should be by citizens of Buffalo. By repeated exceptions upon the the trial he insisted that the contingencies had not happened upon which his liability depended, and whether they had or not is the principal question on this appeal. As to the first, there is no difficulty. The subscription books disclose that the requisite amount was in fact subscribed, and the evidence was sufficient to establish the genuineness of the signatures of the subscribers. Testimony was given tending to that end, and

thereupon the books were introduced in evidence, without objection from the defendant. They contained some subscriptions by individuals, others under names signifying a firm or company, and it was admitted by the defendant "that the personal signatures were genuine, and that the signature of any firm name was made by a member of the firm." That this concession was intended to cover the point now under consideration is rendered quite certain by the qualifying words following it, viz. : " but it was not admitted that S. M. Spencer, or Sidney Shepard, or The Cornell Lead Company, was a citizen of Buffalo, and no concession was made that the signature of any firm or corporate name was a valid subscription." This, I think, was enough to make a *prima facie* case, and in the absence of evidence by the defendant to show that any of the signatures were not genuine, was properly held to be conclusive.

Was it necessary for the plaintiff to go further and show by other evidence the validity of the subscriptions standing in a firm or corporate name ? First. As to the firm or coparthership subscriptions. It was enough, in the first instance, to show the subscription in the firm name written by one partner, and its ratification in the manner hereafter stated. Second. The only corporate name upon the subscription books is " The Cornell Lead Company." It was placed there with the consent of all the stockholders and by authority of the directors, and although not entered upon the corporate books, it is none the less valid. Moreover, it appears from the uncontradicted testimony of Mr. Jewett, the president of the plaintiff, that calls were made upon all the subscribers to the capital stock, that all paid except five, who are named, and among whom are none of those whose subscriptions are now objected to as invalid. There is, then, a complete ratification by the reality of cash payments.

The objection most earnestly relied upon by the learned counsel for the respondent is, that the sum of $200,000 was not subscribed for by citizens of Buffalo ; and if this is so, the judgment appealed from must stand, notwithstanding

the validity or even payment of the subscriptions so made, for the defendant thus qualified his promise. In order to answer the question now raised, we are to ascertain who were intended by the term " citizens of Buffalo." The word has more than one meaning, and must be taken in the sense which best harmonizes with the subject matter in reference to which it is used. With what object and intention, therefore, was it introduced into the contract? This inquiry accords with an accepted rule of interpretation, that "all words, whether they be in deeds or statutes, or otherwise, if they be general and not express and precise, shall be restrained unto the fitness of the matter or person :" (*Bacon's Maxims of the Law, Regula X.*) By the definition usually given a citizen is " an inhabitant of a city, town or place," and so would include every person dwelling in the place named; but it is subject to various limitations depending upon the context in which it is found. It may indicate a permanent resident, or one who remains for a time or from time to time. That it has various meanings, according to the object in view, is well illustrated by different statutes in which it appears. An act which imposes the burden of making and repairing bridges on the "inhabitants," in the town or county in which they are situated, is held by that term to include all holders of houses and lands in the locality, whether resident or not, but as excluding actual dwellers who had no ratable property in the place, such as servants (*Rex v. North Curry* (4 B. & C., 953); and this agrees with the definition given by Jacobs in his Law Dictionary and adopted by ALLEN, Senator, in *The Matter of Wrigley* (8 Wend., 141), viz. : " He who hath a house in his hands in a town, may be said to be an inhabitant." But where a person occupied premises in one parish and carried on his business in person there, but resided in his dwelling-house in another, he was held not to be an inhabitant of the former parish, so as to be bound to serve as its constable. (*Rex v. Allard.* 4 B. & C., 772; *Rex v. Nicholson*, 12 East, 330.) A man may be domiciled in one place and be a resident in

another, at the same time, as in the case of *Wrigley* (*supra*).
His domicile was England, but he was said to be an "inhabitant" of New York while he transacted business there ; and so
in questions affecting the rights of creditors (19 Wend., 47) ;
and those concerning taxation. By the Revised Statutes
(tit. 2, p. 1, chap. 13, art. 1, vol. 1, p. 389, § 5) it is assumed
that a person may reside in more than one place during the
same period ; and his residence, within the meaning of that
section, is declared to be the county, town or ward in which
his principal business shall have been transacted. This
question is considered in *Bell* v. *Pierce* (51 N. Y., 12) ; and
it is there shown that a man may be a resident of two places
at one and the same time, and that "to establish a residence,
requires a less permanent abode than to give a domicile, or
even to create an inhabitance." In the case before us, the
object of the subscription was to provide for the erection of
a hotel ; and this is well put by counsel in behalf of the
respondent. It was, he says, "a project in which the business men of the city were pecuniarily interested," and the
object of the respondent himself is stated by his learned
counsel. He "desired," it is said, "that the hotel, which
he expected and hoped the corporation formed for that purpose would build, and from the erection of which he calculated great pecuniary benefits in his business, should be under
the control and management of his fellow townsmen — *men
whose interests were in the same direction as his.*" This statement is warranted by the defendant's evidence as a witness.
Now to promote this object it was not necessary or expected
that the subscriptions should be by persons who were qualified voters in Buffalo. They would constitute one class of
citizens, and for certain obvious purposes the only ones entitled to that name ; and it is not unlikely that much local
patronage of the hotel when erected would be drawn from
that class. But the object was to erect the hotel, and, for
that purpose, not only to procure the necessary funds, but
at the same time to enlist the interest of the business men
of Buffalo in the enterprise, so that, as far as possible, they

would be concerned in securing for it patronage, and contribute to its success. For that purpose, it would be immaterial whether the subscriber occupied with his family a house within the limits of the city, or outside of them, so long as his place of business was in Buffalo, and he had a permanent pecuniary interest in its welfare and in the success of the new house. In that view we must consider the objections pointed out by the exception taken to the subscriptions of Richmond and Spencer. Mr. Richmond resided, at the time of the trial, in Buffalo, but at the time of the subscription, had his house and legal residence in Batavia, Genesee county, and says : "I boarded in Buffalo, at the Tifft House. I spent nearly all my time in Buffalo. I was engaged in business there." His domicile, then, was Batavia ; but that is in no respect inconsistent with the fact that his residence was in Buffalo. He was actually there the greater part of the time, and was permanently there for business purposes. He is within the definition adopted in *In re Thompson* (1 Wend., 45), viz. : "He who stops even for a long time in a place for the management of his affairs, has only a simple habitation there, but has no domicile." The signature of "B. & S. M. Spencer" was conceded to be genuine ; and the objection at the trial was that S. M. Spencer was not a citizen of Buffalo. It is not claimed that Burrill Spencer was not, and thus the subscription is within the very terms of the contract ; nor would it be otherwise, if, as the defendant claims, there was either no such firm, or Burrill signed without authority, for, in either of those events, he would be liable as upon his individual subscription.

It is not claimed upon this appeal that the want of citizenship applies to the subscription of Sidney Shepard & Co., of which firm Sidney Shepard was a member, or to that of the "Cornell Lead Company." I think that all of the subscriptions were, within the principle above alluded to, and within the intent and meaning of the contract, made by the citizens of Buffalo.

It is, however, contended by the respondent that the trial

court erred in refusing to permit the jury to inquire, first, as to the residence of Richmond, Shepard and Spencer; and second, as to whether $200,000 had been subscribed by the citizens of Buffalo. These questions are substantially the same, and if the conclusion arrived at, when considering the ground upon which the nonsuit was denied was correct, were properly withheld from the jury. In regard to neither, was there any dispute upon any essential fact, and so nothing for the jury to pass upon.

We are thus led to the conclusion that the case was well disposed of by the learned trial judge. Therefore the order of the General Term should be reversed and judgment absolute rendered for the plaintiff upon the verdict, with costs.

All concur.

Order reversed, and judgment accordingly.