## WHEELER & W. MFG. CO. v. L. AUGHEY.

APPEALS BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF JUNIATA COUNTY.

Argued May 27, 1891—Decided October 5, 1891.
[To be reported.]

1. When an agent has procured the note of a third person, drawn to the order of his principal, by means of the representation and upon the condition that it was to be used for a particular purpose, the principal, upon accepting the note, will be bound by the agent's representation and stipulation, even though the making of them was unauthorized: Mundorff v. Wickersham, 63 Pa. 87.

2. Landis being indebted to the plaintiff on a settlement, plaintiff drew up notes for the amount and sent Landis to procure defendant's signature thereto. For the purpose of obtaining the signature, Landis was plaintiff's agent, and plaintiff therefore took the notes subject to conditions affecting their consideration upon which they were obtained by him.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Nos. 441, 442, 443 January Term 1891, Sup. Ct.; court below, Nos. 59, 60, 61 September Term 1889, C. P.

On January 19, 1889, four judgments were entered in the court below to Nos. 58, 59, 60 and 61 September Term 1889, in favor of the Wheeler & Wilson Manufacturing Co. against Mary J. Landis and Lyman Aughey, upon judgment notes under seal signed by the defendants, bearing date June 17, 1889, each for the sum of $220.78, at four, eight, twelve, and sixteen months respectively, with interest. Subsequently, the judgments were stricken off as to Mary J. Landis, for the reason that she was under the disability of coverture. The judgment to No. 58 was probably satisfied by the plaintiff.

On April 28, 1890, Lyman Aughey presented a petition to the court to open the judgments and let him into a defence, and obtained rules to show cause, etc. His petition averred that he was induced to sign the notes by false and fraudulent representations, made to him by H. C Landis, agent of the plaintiff company, to wit, that he, Landis, was not indebted to the company, and that these notes were desired by the company as collateral security for certain sewing machines the company had promised to furnish to him; that the machines were not so furnished, and the notes were used by the plaintiff to secure it for a prior indebtedness of said H. C. Landis, for machines he had previously sold for the company. The testimony taken under the rules was substantially to the same effect as that given on the trial, infra. After hearing, the rules were made absolute, and the cases were put at issue upon pleas of payment.

At the trial on February 2, 1891, the plaintiff having put in evidence the notes in question, the defendant went upon the stand as a witness, when his counsel made the following offer:

Defendant's counsel proposes to prove by the witness on the stand, and others, that on the seventeenth of June, 1889, H. C. Landis, an agent of the plaintiff company, came to the witness with four notes, dated the seventeenth of June, 1889, for $220.78 each; that the said notes were signed by Mary J. Landis, and that Landis said that the company desired the witness to sign these notes, for which they would send him six sewing machines for each note, that he owed the company nothing at that time, and that under this representation the witness signed these notes; and that these representations were false and fraudulent, and that the company never forwarded to H. C. Landis the machines in question: to be followed by proof, also, that Landis was directed by G. H. Pixley, the general agent of the company, to go and have Mr. Aughey to sign these notes in question.

Plaintiff's counsel object, because the notes given in evidence show that they are payable to the Wheeler & Wilson Manufacturing Co., and not to Landis himself; that the agency of Landis for plaintiff cannot be proved by Landis's own declarations; that there is no evidence that Landis was agent of the plaintiff in this or any other transaction, and it is not competent to give declarations of any alleged agent until the agency is proved by competent testimony.

Statement of Facts.

By the court: We think the evidence is admissible. We therefore overrule the objection, and admit the evidence; exception.[3]

The witness then testified to the effect stated in the offer. He was corroborated by other testimony as to the representations alleged to have been made by H. C. Landis at the time of the signing of the notes. Having shown further that the machines referred to were not furnished to Landis, and that George H. Pixley, a general agent of the plaintiff company, received these notes from H. C. Landis after Mary J. Landis had signed them, and then "gave the notes to Mr. Landis to go out and have Mr. Aughey sign them, and have some one to witness the signing of them," the defendant rested.

Testimony for the plaintiff in rebuttal, given by H. C. Landis and others, tended to show that the representations mentioned in the testimony of the defendant were not made as alleged; that, prior to June, 1889, H. C. Landis had been selling machines manufactured by the plaintiff, not as its agent, but under a contract in accordance with which he purchased the machines, giving his notes therefor; that, in the month named, a settlement was made with him by George H. Pixley on behalf of the company, by which it was ascertained that his indebtedness to it amounted to over $800; that Pixley told him he must either pay the money or give notes for it, and proposed to split up the indebtedness into three or four notes, and asked him whom he could get to sign the notes; that Landis replied that he thought he could get his mother, Mary J. Landis, and his uncle, the defendant Aughey, whereupon Pixley prepared four notes; that the notes in question were signed by Mrs. Landis in the presence of both Pixley and H. C. Landis, but H. C. Landis went alone to procure the signature of Aughey; that the defendant signed the notes with knowledge that they were to be received by the plaintiff in settlement of an existing indebtedness, and the company had no notice of the making of any other representations to him, until the filing of his petition to open the judgment. There was also testimony showing that the plaintiff had received from Landis certain accounts and property, to be credited on the notes, and showing the value thereof, to which reference is made in the charge of the court.

At the close of the testimony, the court, BARNETT, P. J., charged the jury in part as follows:

The Wheeler & Wilson Manufacturing Co., the plaintiff in this case, seek to recover from Lyman Aughey the amount due on four several sealed notes dated the seventeenth of June, 1889, each for the sum of $220.78. The execution and delivery of these notes are not denied. The notes have been read in evidence, and if there were nothing else in this case the plaintiff would be entitled to recover.

The defendant alleges and has given evidence by himself, his son and Mrs. Landis, to show that these notes were given for a consideration, which in point of fact failed. He alleges that these notes were given on condition that six sewing machines were to be furnished on each note, by the Wheeler & Wilson Manufacturing Co. to Mr. H. C. Landis, and that in point of fact these machines were never furnished; that the allegation that the company would furnish these machines, was the inducement which led him to sign and deliver these notes, and in point of fact this consideration failed, and therefore the plaintiff is not entitled to recover. If this be the truth of the case; if, as alleged, the consideration of these notes was for six machines to be furnished after the execution of the notes for each note, and these machines were never furnished, then the consideration for which these notes were given failed, and the plaintiff would not be entitled to recover.

On the other hand, the plaintiff, in rebutting this evidence, alleges, and has called Mr. Pixley, and also read the deposition of Mr. H. C. Landis, to show that these notes were not given for the purpose which the defendant alleges, but that, in point of fact, they were given to secure a past indebtedness. Mr. Pixley testifies that he had a settlement with H. C. Landis, and there was some $883.12 of indebtedness owing from Mr. Landis to the company, and that this indebtedness was divided into four notes, each note being $220.78, and that these four different notes were given for the purpose of securing the payment of this past indebtedness. If this is believed, if the jury finds from the evidence that this is the fact in the case, that these notes were given, not for a future consideration to be furnished afterwards, but in point of fact were given to secure

Charge of Court below. .

a past indebtedness, then the plaintiff would be entitled to re-
cover.

Then this raises the question of fact in this case to be deter-
mined by the jury; whether these notes were given for sewing
machines to be furnished thereafter, which in point of fact never
were furnished, or whether these notes were given to secure a
past indebtedness which H. C. Landis owed to the plaintiff.
If they were given for machines to be sent thereafter, and you
should find that they were not sent, then the plaintiff would
not be entitled to recover, and your verdict should be for the
defendant. If, on the other hand, you find that these notes
were to secure a past indebtedness, then the plaintiff should be
entitled to recover, and this is the simple question for the jury
to determine, under all the evidence in the case. . . . . .

If you should find that the plaintiff is entitled to recover,
then the plaintiff admits that the defendant is entitled to cer-
tain credits; that the defendant is entitled to the credit of
$91.60 for accounts which the plaintiff collected that had been
turned over by H. C. Landis; and also for the value of a horse
and wagon, which the evidence seems to show were worth $120;
these credits amounting to $221.60, would pay the first note and
eighty-two cents over. . . . .

The plaintiff has asked the court to charge the jury:

1. That the undisputed evidence shows that the notes in
suit were given to secure the plaintiff's debt which H. C. Lan-
dis owed the said plaintiff; and the undisputed evidence further
shows that the signatures of the defendant to the notes in suit·
were not obtained by the company itself, but by their debtor,
H. C. Landis, to pay the debt of the latter to the plaintiff; and
that there is no evidence that the plaintiff company had au-
thorized Landis to make or had any knowledge of misrepre-
sentations made by said Landis to the defendant, until after
proceedings were commenced to open the judgment entered
thereon; the plaintiffs are not affected by misrepresentations of
H. C. Landis to-day, and the plaintiff is entitled to recover the
balance unpaid on said notes, after allowing the admitted
credits.

Answer: We decline to affirm this point as represented.
We are of the opinion that the maxim, " Qui sentit commo-
dum sentire debet et onus," applies; and that the plaintiff

Charge of Court below.

cannot have the benefit of the security, and at the same time repudiate the contract by means of which it obtained it.[4]

2. There is no evidence in this case that the plaintiff company, or any one for it, said or did anything to induce the defendant to sign these notes, and without this evidence the plaintiff is entitled to recover.

Answer: We decline to affirm this point as requested. The plaintiff may not have done, or authorized any person to do anything to induce the defendant to sign the notes in suit, and yet may not be entitled to recover.[5]

3. The plaintiff is entitled to recover on these notes, for the reason that there is no proof or evidence of misrepresentations or fraud by the plaintiff company, in procuring the defendant's signature to the notes. H. C. Landis, the alleged agent, was acting for himself in this transaction, and not for the plaintiff company, and Lyman Aughey, the defendant, knew this fact.

Answer: We decline to affirm this point as requested.[6]

4. The alleged representations, if in truth made by H. C. Landis to the defendant at the time of the execution of the notes, as to their scope and purpose, cannot and will not discharge the defendant; and in the absence of any other testimony to show fraud or misrepresentation on the part of the plaintiff, the verdict of the jury must be for the plaintiff.

Answer: We decline to affirm this point as presented.[7]

5. That there is no proof or evidence that H. C. Landis was the agent of the plaintiff company in this transaction; and, to prevent the said company from recovery in this suit, the defendant should have established by competent testimony that said H. C. Landis was the plaintiff company's agent in procuring these notes.

Answer: We decline to affirm this point as applicable to the evidence in this case.[8]

6. These notes in controversy being sealed instruments, import a valuable consideration, and therefore the want of consideration is no defence to them. The jury, in determining upon their verdict, must treat the notes as given for a consideration.

Answer: Affirmed. If these notes were given, as we explained in the general charge, to pay a past indebtedness, then it was not intended to pass any present consideration. A man

Arguments.

has a right to pay the debt of another. In such cases, no present consideration is intended to pass between the parties; therefore, the want of consideration cannot be set up as defence. There is a difference between want of consideration, and failure of consideration, in a sealed obligation. There is a failure of consideration when it is given for something to be furnished; some consideration to pass between the parties for which the note is given, and which fails. As in the second instance, if these notes were given for sewing machines to be furnished after the execution and delivery of the notes, and in point of fact never were so delivered, then there would be a failure of consideration.

—The jury returned a verdict for the defendant in each case. Judgment having been entered the plaintiff took these appeals, assigning for error:

.1. The opening of the judgments.

3. The admission of defendant's offer.[3]

4–8. The answers to plaintiff's points.[4 to 8]

*Mr. F. M. M. Pennell* and *Mr. John M. Gest* (with them *Mr. W. P. Gest, Mr. Atkinson* and *Mr. John Sparhawk, Jr.*), for the appellant:

1. There was no legal proof that Landis, in obtaining the defendant's signature to the notes, was the agent of the plaintiff company, so as to bind it by his representations. It was incumbent on the defendant who asserted such agency, to offer substantial proof of it: Hays v. Lynn, 7 W. 524; Moore v. Patterson, 28 Pa. 505; Union Ref. Co. v. Bushnell, 88 Pa. 89; B. & O. Relief Ass'n v. Post, 122 Pa. 579; American Underwriter's Ass'n v. George, 97 Pa. 241. His own acts and declarations were inadmissible as evidence of his authority to represent the plaintiff: Hays v. Lynn, supra; Grim v. Bonnell, 78 Pa. 152; Moore v. Patterson, supra; Whiting v. Lake, 91 Pa. 349; Central Penna. Tel. Co. v. Thompson, 112 Pa. 118; Creighton v. Boudinot, 14 W. N. 556; B. & O. Relief Ass'n v. Post, 122 Pa. 597. Even if he were an agent for the sale of machines, the alleged representations, being outside the scope of such employment, would not bind the plaintiff: Seiple v. Irwin, 30 Pa. 513; Peoples' Bank v. Gayley, 92 Pa. 518; Dripps' Assignees, 4 Clark 87; Carson v. Cochran, 9

Phila. 21; Loudon Savings Fund Soc. v. Hagerstown Bank, 36 Pa. 498; Merrick Thread Co. v. Manufacturing Co., 115 Pa. 314. The case, therefore, should not have been submitted to the jury: Moore v. Patterson, 28 Pa. 505; Twelfth St. Market Co. v. Jackson, 102 Pa. 269.

2. Mere representations by the principal debtor as to the nature and extent of the obligation incurred by the surety, do not affect the rights of the obligee, unless he has notice of the same and ratifies them, or has previously authorized the making of them: Simpson v. Bovard, 74 Pa. 351; Lane's App., 112 Pa. 499; Johnston v. Patterson, 114 Pa. 398; Rothermal v. Hughes, 134 Pa. 510; Wayne v. Commercial N. Bank, 52 Pa. 344; Beyerle v. Hain, 61 Pa. 226. We invoke, also, the principle that where one of two innocent persons must suffer, he must bear the loss whose act or neglect occasioned it: Wethrill's App., 3 Gr. 281; Jeffers v. Gill, 91 Pa. 290. By relying upon collateral representations, without ascertaining their truth, the defendant put it into the power of Landis to mislead the plaintiff, relying upon the written contracts returned to it, signed by defendant. As the representations set up as a defence to the judgments were not admissible to affect the plaintiff, it follows that the court ought not to have opened the judgments: Earley's App., 90 Pa. 321; Sylvius v. Kosek, 117 Pa. 67; English's App., 119 Pa. 534; Jenkintown N. Bank's App., 124 Pa. 337; Knarr v. Elgren, 19 W. N. 531.

*Mr. Alfred J. Patterson* (with him *Mr. J. Howard Neely* and *Mr. Jeremiah Lyons*), for the appellee:

1. If the plaintiff adopts the contract made with the defendant by Landis, it must do so entirely. It cannot ratify a part of what Landis did, and repudiate the remainder: Mundorff v. Wickersham, 63 Pa. 87; Broom's Leg. Max., 632; Hovil v. Pack, 7 East 164; Coleman v. Stark, 1 Ore. 115. It is therefore unnecessary to show that Landis was the plaintiff's general agent. The authority of an alleged agent may be established by circumstances, the question being for the jury: Valentine v. Packer, 5 Pa. 333; and may be shown by acts of the agent and their recognition by the principal: Woodwell v. Brown, 44 Pa. 121; Balt. etc. Steamboat Co. v. Brown, 54 Pa. 77; Theyken v. Machine Co., 109 Pa. 95. Where some evidence

Arguments.

of agency has been given, the acts and declarations of the agent are admissible : Stewartson v. Watts, 8 W. 392. The testimony as to the making of representations at the signing of the notes was admissible, however, as a part of the res gestæ, standing in immediate causal relation to the act of signing : Wharton on Ev., §§ 259, 262; Rinesmith v. Railway Co., 90 Pa. 262.

2. Landis was an agent of the plaintiff in some sense, and the plaintiff is affected by his declarations : Lycoming Ins. Co. v. Woodworth, 83 Pa. 223. However innocent he may be, a man cannot reap the benefits of his agent's fraud : Hein v. Nichols, 1 Salk. 288; Musser v. Hyde, 2 W. & S. 314; Bennet v. Judson, 21 N. Y. 238; Elwell v. Chamberlain, 31 N. Y. 611; Southern Exp. Co. v. Palmer, 48 Ga. 85; Jones v. Building Ass'n, 94 Pa. 215; Caley v. Railroad Co., 80 Pa. 363. If he would have the benefit of the bargain, he must adopt it as the agent made it, including the statements and representations which induced it : Keough v. Leslie, 92 Pa. 424; Hughes v. First N. Bank, 110 Pa. 428; 1 Addison on Cont., 109, 112 ; Wharton on Cont., §§ 96, 130, 269. When one of two persons, equally innocent of actual fraud, must suffer loss from the act of a third, he who has held the latter out as worthy of confidence and as having authority, or who, by misplaced confidence, has put it in his power to commit the fraud, must bear the consequences : Evans on Agency, 591; Brooke v. Railroad Co., 108 Pa. 529; Penna. R. Co.'s App., 86 Pa. 80; Xander v. Commonwealth, 102 Pa. 434; Bank of Ky. v. Schuylkill Bank, 1 Pars. Eq. 248.

3. Who was the innocent party in this transaction? Landis was sent to the defendant to procure something for the express benefit of the plaintiff. By sending him, the plaintiff enabled him to perpetrate a fraud on the defendant. Moreover, the loss to the plaintiff had already occurred, Landis then being worthless, and the act of the defendant did not cause the plaintiff to suffer any loss. It is well settled that fraud, or failure of consideration, may be shown as a defence, under the plea of payment with leave, in an action on a bond or note : Baring v. Shippen, 2 Binn. 166; Stubbs v. King, 14 S. & R. 206 ; Carpenter v. Groff, 5 S. & R. 162; Geiger v. Cook, 3 W. & S. 266 ; Houk v. Foley, 2 P. & W. 245; McCulloch v. Mc-

Kee, 16 Pa. 289. And, when there is any evidence, however slight, to impeach the bona fides of the transaction, the holder may be required to give full proof of consideration: Hancock's App., 34 Pa. 155; Twitchell v. McMurtrie, 77 Pa. 383.

OPINION, MR. JUSTICE GREEN:

The learned court below distinctly charged the jury that, if the notes in suit were given for a past indebtedness of Landis to the plaintiff, their verdict should be in favor of the plaintiff; but if they found that they were given for machines to be furnished thereafter, and the machines were not delivered, the verdict should be for the defendant. The jury found for the defendant, and thereby determined that the notes were given for machines to be furnished in the future. There was abundant testimony in support of the defendant's contention, and we must therefore regard it as an established fact that the notes were given in consideration that machines should be delivered to Landis by the plaintiff subsequently to the execution and delivery of the notes in question. It is beyond all question that Landis obtained the signature of the defendant to the notes, and that he delivered the notes so signed to the plaintiffs, who received and kept them and affirmed their title to them by bringing suit upon them against the defendant. For the purpose of obtaining the notes, Landis most certainly acted as the representative of the plaintiffs, and they conclusively accepted the fruits of his act. That they cannot do this without being subject to the conditions upon which he obtained the notes, whether he had authority or not to make or agree to those conditions, is too well settled to admit of any doubt.

The whole doctrine was well expressed by SHARSWOOD, J., in the case of Mundorff v. Wickersham, 63 Pa. 87:

" If an agent obtains possession of the property of another, by making a stipulation or condition which he was not authorized to make, the principal must either return the property, or, if he receives it, it must be subject to the condition upon which it was parted with by the former owner. This proposition is founded upon a principle which pervades the law in all its branches: Qui sentit commodum sentire debet et onus. The books are full of striking illustrations of it, and more especially in cases growing out of the relation of principal and agent.

Opinion of the Court.

Thus, where a party adopts a contract which was entered into
without his authority, he must adopt it altogether. He cannot
ratify that part which is beneficial to himself, and reject the re-
mainder; he must take the benefit to be derived from the
transaction cum onere."

This doctrine is so reasonable and so entirely just and right, in
every aspect in which it may be considered, and it has been
enforced by the courts with such frequency and in such a great
variety of circumstances, that its legal soundness cannot for a
moment be called in question.

It is of no avail to raise or discuss the question of the means
of proof of the agent's authority. The very essence of the
rule is that the agent had no authority to make the representa-
tion, condition, or stipulation, by means of which he obtained
the property, or right of action of which the principal seeks to
avail himself. It is not because he had specific authority to
bind his principal for the purpose in question, that the principal
is bound, but notwithstanding the fact that he had no such
authority. It is the enjoyment of the fruits of the agent's
action which charges the principal with responsibility for his
act. It is useless, therefore, to inquire whether there is the
same degree of technical proof of the authority of the agent,
in the matter under consideration, as is required in ordinary
cases where an affirmative liability is set up against a principal
by the act of one who assumes to be his agent. There the
question is as to the power of the assumed agent to impose a
legal liability upon another person; and, in all that class of
cases, it is entirely proper to hold that the mere declarations
of the agent are not sufficient. But in this class of cases the
question is entirely different. Here the basis of liability for
the act or declaration of the agent, is the fact that the princi-
pal has accepted the benefits of the agent's act or declaration.
Where that basis is made to appear by testimony, the legal
consequence is established. Mr. Justice SHARSWOOD, in the
case above cited, after enumerating many instances in which
the doctrine was enforced, sums up the subject thus: " Many
of these cases are put upon an implied authority, but the more
reasonable ground, as it seems to me, is that the party having
enjoyed a benefit must take it cum onere."

We are of opinion that the learned court below was entirely right in the treatment of this case.

                    Judgment affirmed in each of these cases.

On February 8, 1892, a motion for a re-argument was refused.