## Harvey v. National Drug Company

R. W. *Archbald, Jr.*, for plaintiff.

R. C. *Cooney* and S. F. *Glenn*, for defendant.

ALESSANDRONI, J., July 12, 1937.—Suit was brought by plaintiff as the owner of 30 shares of the first preferred stock of defendant corporation, of the par value of $100 per share, the stock paying 7 percent annual cumulative dividends. The statement of claim sets forth that defendant has failed to pay the 7 percent annual cumulative dividend for the years 1931 to 1934, inclusive, although defendant has paid dividends to the holders of second preferred and third preferred stock for those years out of the net earnings of the company; that on/ or about December 28, 1934, the articles of incorporation were amended so as to substitute for the first, second and third preferred stock, 6 percent cumulative participating preferred stock, of a par value of $50 per share, to be exchanged for the three classes of preferred stock on the basis of two shares of new stock for one of old; that plaintiff did not consent to the amendment and refused to accept the new stock for the first preferred stock owned by her; that dividends have been paid on the new stock since December 1934, but defendant has refused to pay plaintiff her regular quarterly dividends. Plaintiff, there-

fore, seeks to recover the dividends to which she is entitled upon her shares of stock.

The affidavit of defense avers that on December 28, 1934, a majority of the shareholders of each class of stock approved a change of capitalization whereby, in place of common stock and first, second and third preferred stock, the capital of the corporation was divided into 20,000 shares of stock of a par value of $50 each, of which 11,-694 shares were to be issued as common stock and 8,306 shares were to be issued as 6 percent cumulative participating preferred stock. This change provided that two shares of the new preferred stock were to be issued for each old share of preferred stock and two shares of new common stock were to be issued for each share of the old common stock. Cumulative dividends on the old preferred stock for the years 1931 to 1934 were paid by a cash dividend of 10½ percent and a stock dividend of 17½ percent payable in the new preferred stock, or a total dividend of 28 percent, and plaintiff was given the right to convert her stock dividend into cash if she so desired.

The affidavit of defense further avers that the amendment to the articles of incorporation hereinbefore set forth was duly made in accordance with the Business Corporation Law of May 5, 1933, P. L. 364, that all shareholders of the company, excepting plaintiff and two other shareholders, who owned a total of 14 shares of the old preferred stock and 26 shares of the old common stock, have indicated their willingness to comply with the terms of the amendment. Defendant avers that it has tendered and is still willing to tender to plaintiff the preferred dividends for the years 1931 to 1934, inclusive, in cash and stock, and if plaintiff so desires it will arrange to convert the stock dividend into cash. Defendant also avers that it is ready to tender to plaintiff 60 shares of the new cumulative participating preferred stock upon delivery of the certificate for 30 shares of the old first preferred stock.

Subsequently, the affidavit of defense was amended by stipulation of counsel adding a paragraph declaring that plaintiff's certificate of stock was issued by the corporation under date of July 3, 1930, and at the time of the amendment of the charter of the corporation plaintiff was also a holder of 300 shares of common stock of the par value of $100 a share, represented by a certificate issued July 3, 1930, two shares of common stock of a par value of $100 each, represented by a certificate issued March 29, 1933, and 28 shares of common stock of a par value of $100 per share, represented by a certificate issued June 15, 1934. It is further alleged that on January 13, 1936, plaintiff surrendered the aforesaid 330 shares of common stock of a par value of $100 a share and caused to be issued to her in exchange therefor 660 shares of the new common stock in par value of $50 a share, upon which she has collected a dividend, and has voted said stock at the annual meeting of stockholders held on February 11, 1936.

The rule for judgment for want of a sufficient affidavit of defense is based upon the contention that the amendments to the charter pursuant to the Business Corporation Law of May 5, 1933, supra, are unconstitutional, as they impair the obligations of contracts in violation of article I, sec. 17, of the Constitution of Pennsylvania, and article I, sec. 10, of the Constitution of the United States.

Two questions are presented for our consideration: First, whether the amendment to the charter is unconstitutional as impairing the obligation of contracts; second, whether plaintiff has ratified, confirmed and accepted the amendment to the charter by virtue of the fact that she has converted 330 shares of the old common stock into 660 shares of the new common stock in accordance with the reorganization of the capital stock provided for in the amendment to the charter.

The latter question will be first considered. Prior to the amendment of the charter changing the stock classifi-

cation, there were first preferred shares, second preferred shares, third preferred shares and common shares, all of the par value of $100. After the amendment to the charter was made, pursuant to the provisions of the Business Corporation Law, supra, the capital stock of the corporation consisted of 8,306 shares of 6 percent cumulative participating preferred stock of the par value of $50 a share, and 11,694 shares of common stock of the par value of $50 per share. The holders of the old stock were entitled to receive two shares of the new preferred or common stock for each share of the preferred or common stock previously held, and at the time of the amendment plaintiff owned 30 shares of 7 percent preferred stock, as well as 330 shares of common stock. All stockholders, except plaintiff and two others, whose total combined stock was comparatively negligible, have approved the amendment, either by voting in favor of it or by exchanging their old stock for the new stock. Plaintiff, herself, has exchanged her 330 shares of old common stock for 660 shares of new common stock, and it is contended by defendant that this exchange of the common stock and the subsequent exercise of the rights of a stockholder by virtue of the holding of new stock constitute a ratification of the amendment and, therefore, plaintiff cannot take the benefits of part of the amendment and refuse to be bound by the other part to which she is not favorable.

It is at once apparent that the entire reorganization of the capital structure of defendant corporation was made as a whole and not in divisible parts. It is impossible to segregate the new common stock from the new preferred stock. The acceptance of the amendment by plaintiff insofar as it applied to the old common stock precludes her from now contesting the validity of the amendment insofar as it concerns the old preferred stock that she held, for it is elementary law that a party cannot accept that part of a contract which is beneficial while rejecting such part as is not. The contract must be accepted in toto

or not at all, and as she has elected to accept the benefit accruing to her through the exchange of her common stock she cannot now be heard to complain of the amendment regarding the preferred stock. The entire capital structure of the corporation has been completely revamped and the reorganization must stand or fall as a whole. Insofar as this plaintiff is concerned, her action in exchanging her common stock after the institution of this suit is tantamount to a ratification of the entire amendment.

The decisions in this Commonwealth are uniform in supporting this conclusion. As stated by our Supreme Court at an early date in Mundorff v. Wickersham, 63 Pa. 87:

"If an agent obtains possession of the property of another, by making a stipulation or condition which he was not authorized to make, the principal must either return the property, or, if he receives it, it must be subject to the condition upon which it was parted with by the former owner. This proposition is founded upon a principle which pervades the law in all its branches: *Qui sentit commodum, sentire debet et onus*. The books are full of striking illustrations of it, and more especially in cases growing out of the relation of principal and agent. Thus, where a party adopts a contract which was entered into without his authority, he must adopt it altogether. He cannot ratify that part which is beneficial to himself and reject the remainder: he must take the benefit to be derived from the transaction *cum onere:* Broom's Legal Maxims 632; Hovil v. Pack, 7 East 164; Coleman v. Stark, 1 Oregon 115. . . . Many of these cases are put upon an implied authority, but the more reasonable ground, as it seems to me, is, that the party having enjoyed a benefit, must take it *cum onere.*"

In Watt's Appeal, 78 Pa. 370, 394, a somewhat analogous situation arose, and the court held that a shareholder could not

". . . pocket the gain resulting from his delay or thus wait in order to observe the result of the experiment, and when it fails to produce the result expected, fall back upon his protest as a saving of his legal remedies. His neglect to act at the proper time bars his right of action as effectually as his neglect to protest."

In other words, one cannot accept the benefits of any change that may be made and still hold the party responsible who makes the change in the event it does not prove satisfactory. A party must take one position or the other. In Wheeler & Wilson Mfg. Co. v. Aughey, 144 Pa. 398, the court used the following language:

"For the purpose of obtaining the notes, Landis most certainly acted as the representative of the plaintiffs, and they conclusively accepted the fruits of his act. That they cannot do this without being subject to the conditions upon which he obtained the notes, whether he had authority or not to make or agree to those conditions, is too well settled to admit of any doubt. . . .

. "This doctrine is so reasonable and so entirely just and right, in every aspect in which it may be considered, and it has been enforced by the courts with such frequency and in such a great variety of circumstances, that its legal soundness cannot for a moment be called in question."

In Jourdan v. Andrews, Trustee, 258 Pa. 347, 354, the rule was expressed as follows:

"It is contended, however, that, notwithstanding plaintiff's attorney drew this declaration, and the former accepted $1,635 paid in accordance therewith, yet he is not bound thereby, since no express notice of its provisions was brought home to him, personally; but an amply sufficient answer to this contention is: there being no evidence adequate to raise a trust ex maleficio, plaintiff had to plead and now has to stand upon the written declaration in order to show any trust at all; under such circumstances, he cannot be permitted to cling to the instrument

with one hand while he assails it with the other (Eyrick & Deppen v. Hetrick, 13 Pa. 487, 493)."

In Weschler v. Buffalo & Lake Erie Traction Co., 51 Pa. Superior Ct. 92, it was held:

"The company could not ratify the part beneficial to it and reject the remainder: Mundorff v. Wickersham, 63 Pa. 87; Savory v. North East Boro., 26 Pa. Superior Ct. 1."

To the same effect see Kalbach v. Marine-Galligan Co., 92 Pa. Superior Ct. 185, wherein the Superior Court stated:

"The principle is well established that where one adopts a contract entered into without his authority he must adopt it wholly. He may not ratify the beneficial part and reject the remainder: Hartzell v. Ebbvale Mining Co., 239 Pa. St. 602; Mundorff v. Wickersham, 63 Pa. 87; Wheeler & Wilson Co. v. Aughey, 144 Pa. 398; Benjamin v. Holgate, 51 Pa. Superior Ct. 104."

In Commonwealth ex rel. v. Flannery, 203 Pa. 28, the corporation was held bound by the restrictions of the new constitution by virtue of the fact that it had accepted the benefits of the new constitution, the court stating:

"By obtaining new franchises it became ipso facto subject to the fundamental law which existed at the time they were created. By doing what was done in this case the corporation acquired a benefit under the new constitution, and it must therefore bear the burden of a regulation which, though out of harmony with the uniform practice of the corporation until the present year, is not in conflict with any express franchise originally conferred."

It is thus obvious without further discussion that plaintiff, having accepted the provisions of the amendment to the charter by exchanging the bulk of her stock, cannot now repudiate in part the amendment which she has ratified.

The disposition of this first question would be sufficient to warrant the discharge of the rule, but we have con-

sidered the question of the constitutionality of the change as well because of the fact that there appear to be no reported cases in Pennsylvania adjudicating the constitutionality of an amendment to the corporate structure such as is herein involved. The right to alter, revoke or amend a corporate charter was reserved to the State in the Constitution of 1874, art. 16, sec. 10, the only limitation being that "no injustice shall be done to the corporators." Both the Constitution of the United States and of the State of Pennsylvania prohibit the impairment of the obligation of contracts, and plaintiff contends that the issuance of stock to her was a contract which cannot be altered or modified without her consent. It is to be noted that the only constitutional restriction against the alteration or amendment of the charter is that no injustice shall be done to the corporators. In the present case plaintiff received two shares of 6 percent cumulative participating preferred stock for each share of the preferred stock which she held, the new stock having a par value of $50 per share and the old stock having a par value of $100 a share. Plaintiff argues that the loss of 1 percent interest constitutes an injustice to her, as it is an impairment of her right of contract, although it is to be noted that the old preferred stock was not participating and the new preferred stock is.

The record is devoid of any evidence indicating that the new stock is not equal in value to the old stock on the basis of two shares for one. It also should be noted that practically all the preferred stockholders have accepted the new stock and thus must have deemed it to be to their best interests rather than constituting an injustice to them.

In Pa. R. R. Co. v. Philadelphia County, 220 Pa. 100, 113, the rule is stated:

"But while the legislature is permitted to alter or revoke, it is prohibited from doing so in such manner that injustice will be done to the corporators. Whether the legislature has attempted to enact a measure prohibited

by the constitution is for the courts; whether injustice has been done in any particular case is inherently and necessarily a judicial question."

This rule is further elaborated in Commonwealth v. Herr, 229 Pa. 132, 139, as follows:

"Nothing but a clear violation of the constitution, 'a clear usurpation of powers prohibited' will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void: Sharswood, J., in Penna. R. R. Co. v. Riblet, 66 Pa. 164. The right of the judiciary to declare a statute void and to arrest its execution is one which, in the opinion of all courts, is coupled with responsibility so grave that it is never to be exercised except in very clear cases. 'The party who wishes to pronounce a law unconstitutional takes upon himself the burden of proving beyond all doubt that it is so.' "

In Manheim Borough v. Manheim Water Co., 229 Pa. 177, 180, it is ruled:

"Where the legislature is given the constitutional power to alter, revoke or annul a charter, the charter is still accounted a quasi contract: Wagner Free Institute v. Phila., 132 Pa. 612; and in exercising this power the legislature must act 'in such manner that no injustice shall be done to the corporators.' Williamsport Passenger Ry. Co. v. Williamsport, 120 Pa. 1. 'Whether injustice has been done in any particular case is inherently and necessarily a judicial question.' Penna. R. R. v. Phila. County, 220 Pa. 100."

Under the present state of the record this court cannot rule that injustice has been done to plaintiff. In fact, her actions would seem to indicate that the reorganization has benefited her, for she has converted approximately 90 percent of her holdings in accordance with the reorganization plan, and has voted said new stock at a stockholders' meeting. The issue is in reality a broad one and not merely a narrow question of the individual rights of this particular stockholder. All the stockholders of a

corporation are really constituent members of a complete entity, and it is practically impossible at any time to obtain the unanimous decision of a large group as to what action should be taken for the best interests of the corporation. The legislature has recognized the practical aspects of this situation in providing that the majority of the shareholders may amend the charter in certain respects specifically enumerated in the act. The stockholders have almost unanimously accepted the amendment, and following the rules herein enumerated this court cannot find that the amendment is unconstitutional as impairing plaintiff's right of contract. In fact, we find that no injustice has been done. The record does not justify a contrary conclusion.

This question has been a moot one ever since the classic Dartmouth College Case: The Trustees of Dartmouth College v. Woodward, 4 Wheat. (U. S.) 518; and the decisions not only in the United States courts but in the various State courts represent widely divergent and ramified viewpoints requiring careful analysis. We have examined many of the cases with interest and are of the opinion that the better and more enlightened view, not only from the legal but from the common-sense and practical viewpoint, requires that legislation such as that now before us be sustained.

This viewpoint is expressed very lucidly in Keller et al. v. Wilson & Co., Inc., 180 Atl. 584 (Del. 1935). The facts in that case were similar, and the court stated:

"If it be said that such a stipulation is a hard one, the answer of those who defend it would obviously be first, that it is a stipulation that is voluntarily entered into; second, that the common enterprise may find itself in such a plight, as it is contended this particular defendant did, that if it were not for such a stipulation the structure of the whole corporate edifice might fall to the great injury of all the stockholders it houses, so to speak; and finally, the security against an oppressive resort to an exercise of the stipulated right is the power of the ma-

jority of those affected by it, or more if the charter so provides, to defeat its operation by withholding their assent. In this as in many other instances of corporate decision, the principle inherent in a democracy prevails, viz., that the voice of a majority at least shall, as a practical proposition, be accepted as an expression of what is best for the whole. There has been a gradual departure in corporate government and functioning in recent times from the old conception which formerly prevailed when the right of individual veto gave dangerously obstructive powers to a single dissentient. Whether it be right or wrong as a matter of policy, such has been the trend in modern legislation in its treatment of the corporate organism. Perhaps its most pronounced exhibition is to be found in the recent amendment to the National Bankruptcy Act, familiarly known as section 77*B* (11USCA §207) ."

Similarly in Hinckley v. Schwarzschild & Sulzberger Co. et al., 107 App. Div. 470, 475, 95 N. Y. Supp. 357, the court stated:

"It was said in *Looker* v. *Maynard* (179 U. S. 46) that the effect of this reservation was to leave in the Legislature 'the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the Legislature may deem necessary to carry into effect the purpose of the grant or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs.' It is evident that the present legislation does not defeat or impair the object of the grant; it cannot be said that it does not seek to carry into effect the purposes of the grant, and in the orderly course of administration of the affairs of the corporation, prosecuted in good faith, it cannot be said that the issue of preferred stock is not for its benefit. As the law is general and applies alike to all domestic stock corporations, it may be deemed to exhibit the public policy of the

State with respect thereto, and, therefore, its adoption indicates a legislative intent to promote the public good in connection with the administration of the affairs of corporations to which its provisions are applicable. The case would, therefore, seem to be brought within the legislative power in every aspect, unless its enforcement upon corporations existing prior to its passage can be said to interfere with contract or vested rights. If it does, then it would not be authorized. . . . These authorities have been uniformly followed in this State and they seem to establish that the imposition by the Legislature upon shareholders of additional obligations not within the terms of the contract under which they subscribed and paid for their stock did not interfere with either a contract or a vested right. . . . Equality in voting power of stock represents valuable rights and privileges quite as important as any other equality created in shares of stock. (*Smith* v. *Atchison, T. & S. F. R. Co.*, 64 Fed. Rep. 272.) It must, therefore, be regarded as settled that the mere working of inequality in shares of stock does not avail to defeat either a vested or a contract right.

"In *Hale* v. *Cheshire R. R.* (161 Mass. 443) there was a consolidation of two railroads authorized by the Legislature upon terms, whereby the stockholders of each railroad surrendered their shares of stock and received in exchange therefor certain shares of the consolidated company. It was held that such exchange, having been authorized by the Legislature under its reserved power to alter and repeal, was binding upon the stockholders, and that a dissenting stockholder could not claim better terms than a majority of the stockholders of each company, acting in good faith, voted to give and take. The interference here with vested and contract rights would seem to have been quite radical. The right of the Legislature, however, was supported upon the ground evidently that the dissenting stockholder held his stock subject to the reserved right of the Legislature to make this change; that it was a part of the contract under which he held,

and, therefore, that there was no interference with either vested or contract rights.

"In varying form the principle announced in these decisions has received uniform support in the courts of this State (*Hyatt* v. *Esmond*, 37 Barb. 601; *Union Hotel Co.* v. *Hersee*, 79 N. Y. 454; *People ex rel. Kimball* v. *B. & A. R. R. Co.*, 70 id. 569; *People* v. *O'Brien, supra; Grobe* v. *Erie Co. M. Ins. Co.*, 39 App. Div. 183, affirmed on opinion below, 169 N. Y. 613) ; also by the Supreme Court of the United States (*Holyoke Company* v. *Lyman*, 15 Wall. 500; *Close* v. *Glenwood Cemetery*, 107 U. S. 466; *Wright* v. *Minnesota Mut. Life Ins. Co.*, 193 id. 657) ; and in other States and Federal courts (*New Haven & Derby R. R. Co.* v. *Chapman*, 38 Conn. 56; *Harper* v. *Ampt*, 32 Ohio St. 291; *Gregg* v. *G. M. & S. Co.*, 164 Mo. 616; *Berger* v. *U. S. Steel Corporation*, 63 N. J. Eq. 809; *McKee* v. *Chautauqua Assembly*, 130 Fed. Rep. 536; *C. H. Venner Co.* v. *United States Steel Corp.*, 116 id. 1012).

"These cases would seem to authorize the conclusion that acts which do no more than regulate and control the internal management of a corporation, so far as it has relation to the public and concerns the policy of the State, are within the power to alter and repeal, even though the exercise of the power adds to the burden of the stockholder by increasing his liability, or diminishes the value of his stock, or changes the name, offices or proportion in management and control of the corporation. Within this power under this rule must necessarily fall the right to change the capital stock of the corporation as to amount, kind and classification. In effect it must be deemed to exhibit the policy of the State adopted to promote the corporate purpose, enhance its welfare, and extend its business. . . . But the power of the State to regulate and control within its reserved power met with no such obstacle; and, clearly, if the Legislature had the right to interpose its mandate in such a case it must follow that mere interference with rights secured by contract as between individual incorporators and stockholders is no answer to

the right of the State in the interest of the public good and in the regulation of private corporations by general law to exercise such right under the reserved power."

This decision was cited with approval in In re Application of Horace W. Dressner, 247 N. Y. 553, wherein Cardozo, C. J., Lehman, J., Pound, J., and Kellogg, J., sustained the right to create a preference in stock over the objection of the minority shareholder. Also see In re Schaffer Stores Co., Inc., 222 App. Div. 845, 229 N. Y. Supp. 735.

We have found a somewhat analogous situation in the early case of Curry v. Scott, 54 Pa. 270, 277, wherein the following language was used:

"The bill also assails another Act of Assembly, passed on the 21st day of March 1865, by which the board of directors of the company was authorized to issue preferred stock. It avers that the plaintiff never agreed to any such issue, that the act was procured without his assent and that he did not know of its passage until months after it had been enacted. It also charges that it is the intention of the company to issue such preferred stock. But why this is illegal or how it is injurious to the plaintiff the bill does not show. Doubtless the Act of Assembly did not effect an alteration in the charter until accepted, but the bill does not deny that it was accepted by the stockholders. It admits it was by the board of directors. Clearly if accepted by the stockholders, the directors are authorized to issue a preferred stock, and their doing so is no wrong to the complainant, though he may be opposed to their action. It is not to be questioned that the legislature may confer enlarged powers upon the managers of a corporation with the assent of the shareholders, and that no one stockholder, by refusing his assent, can hinder the exercise of the enlarged powers."

And now, to wit, July 12, 1937, the rule for judgment for want of a sufficient affidavit of defense is discharged.