## Rosenberg v. Dahl.

(Decided January 12, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Animals—Horse Running Away on Street—Presumption of Negligence.—When a horse that has been left unhitched and unattended on the street of a city runs away, thereby causing injury, the complaining party may rest his case on the prima facie inference of negligence arising from the fact that the horse was left unhitched and unattended, without offering evidence as to the habits or qualities of the horse or the cause that made him run away.

2. Animals—Horse Running Away on Street—Burden of Proof.— Negligence of Owner Question for Jury.—The mere fact that an unhitched, unattended horse runs away in the street of a city, does not create a conclusive presumption of negligence; but whenever a horse so left runs off, then the owner takes the burden of showing the disposition and qualities of the horse and that in leaving him unhitched he acted with reasonable prudence, and, it is for the jury to say whether he was or was not guilty of negligence.

3. Evidence—Weight of for Jury—Answers of Witness not Conclusive. —The jury are not bound to accept as true the direct answers of

a witness to one or more questions, but may, upon the whole of his evidence, disregard his "yes and no" answers, and, upon the facts and circumstances disclosed by his evidence, find a verdict contrary to his express declarations.

4. Agency—Liability of Principal for Negligence of Agent.—Where the owner of a horse permits his agent or employe to use him, the owner is liable to a person who is injured by the horse through negligence of the agent or employe.

5. Damages—Excessive Damages.—This court is not authorized to grant a new trial merely on the ground that the assessment of damages is excessive, unless they appear to have been awarded under influence of passion or prejudice or are so excessive as to be entirely out of proportion to the injury sustained.

6. Trial—In Actions for Tort Where Only One of Several Defendants Is Summoned.—Section 363 of the Civil Code provides that in certain actions the plaintiff can only demand a trial as to part of the defendants upon discontinuing his action as to those not served with process, but the defendant, if he wishes to object to a trial, must make his objection in seasonable time, and if he fails to so object, he cannot thereafter avail himself either in the trial court or in this court of the benefits of the code provision.

7. Judgment—Error in Form of Not Prejudicial.—Where "A" and "B" were made defendants but "A" only was served with process and answered, a judgment against "A" and "B" was not prejudicial to the rights of "A," as the judgment as to "B" was void.

8. Judgment—Surplus Matter.—Surplus matter in a judgment will not be ground for reversal unless the rights of the real defendant are prejudiced thereby.

M. A. SACHS, D. A. SACHS, J. G. SACHS, BENJ. H. SACHS and D. A. SACHS, JR. for appellant.

J. L. RICHARDSON and LIEBER & HEIDENBERG for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Dahl, brought this suit against the appellant, "S. Rosenberg and others, partners doing business under the firm name and style of Royal Milling Company, and George Romiser," to recover damages for personal injuries sustained, as he alleged, when a vehicle in which he was riding in the city of Louisville was collided with by a runaway horse and buggy owned, as he alleged, by "S. Rosenberg and others unknown to this plaintiff, doing business under the firm name and style of Royal Milling Company," and which at the time of the collision was being used by Romiser, their servant and agent.

It appears that the summons issued on the petition was executed on Rosenberg individually and also as pres-

ident and chief officer of the Royal Milling Co., neither Romiser nor any other defendants being served with process.

Rosenberg individually filed his answer, in which, after traversing the averments of the petition, he specifically denied that at the time of the accident "Romiser was a servant, agent or employe of the defendant Rosenberg or of said Rosenberg and others doing business under the firm name or style of Royal Milling Company, or that he ever was an agent, servant or employe of defendant Rosenberg."

In a separate paragraph he set up as a defense the contributory negligence of Dahl.

On a trial of the case before a jury there was a verdict reading: "We, the jury, find for the plaintiff in the sum of $2,500.00," and on this verdict the following judgment was entered: "It is considered and adjudged by the court that the plaintiff, George Dahl, recover of the defendants, S. Rosenberg, and others, partners, doing business under the firm name and style of Royal Milling Co., and George Romiser, the sum of $2,500.00, with 6% interest per annum from September 18, 1913, and his costs."

A reversal of this judgment is asked because the evidence failed to show that Romiser, who was in charge of the horse at the time it ran off, was an agent, servant or employe of Rosenberg, and also for other reasons that will be noticed in the progress of the opinion.

The circumstances of the accident are about these: Romiser was driving the horse that ran off to a buggy while he was out soliciting customers for flour. When he went into the store of a man named Ott on Storey avenue, in the city of Louisville, for the purpose of talking to him about the flour he was selling, he left the horse attached to the buggy standing on the street, unhitched and unattended, in front of the store. A little while after Romiser went into the store the horse, for some cause not explained in the evidence, ran away and the front wheel of the buggy collided with the rear wheel of the surrey in which appellee was riding. In the collision, and as a result of it, appellee was thrown out, or partly out, of the surrey, receiving the injuries for which he sought to recover damages.

As the alleged negligence on which the action was founded grew out of the conduct of Romiser, who was in

charge of the horse, it was essential to a recovery against Rosenberg that the appellee should have introduced evidence sufficient to show that Romiser was using the horse in connection with the business of Rosenberg, and while acting as his agent or employe, and it is earnestly contended by counsel for the appellant that the evidence on behalf of appellee did not establish the employment or agency.

Of course, if Romiser, in using the horse and buggy at the time, was acting as the agent of Rosenberg, or in his employment, and his negligence caused the injury to appellee, Rosenberg could be made liable in damages for the negligence of his agent or employe; but if Romiser was not using the horse and buggy as an agent or employe of Rosenberg, then Rosenberg could not be subjected to damages on account of the negligence of Romiser in leaving the horse standing on the street unhitched.

We have read and considered very carefully the evidence of Romiser and Rosenberg, the only witnesses who testify on this subject, and both of them say, in answer to direct questions, that Romiser, on the day the accident happened, was not soliciting orders for or acting as agent or employe either for Rosenberg or the Royal Milling Co., which it appears was the name assumed by Rosenberg in the conduct of his business as a dealer in flour. But when the whole of their evidence is read, it leaves the unmistakable impression that Romiser was in fact using the horse and buggy in soliciting orders for Rosenberg and the Royal Milling Co. The evidence of these witnesses is full of evasion and effort to exonerate Rosenberg from liability for the accident, and the jury having the right to weigh and consider the whole of the evidence and the fair and reasonable inferences that might be drawn therefrom, came to the conclusion that Romiser was an agent of Rosenberg and the Royal Milling Co., and we are not prepared to say that their finding upon this disputed issue of fact is not sustained by sufficient evidence, direct and circumstantial, to support the verdict.

When a witness is examined concerning a transaction the jury are not bound to accept as true his direct answers to one or more questions, but may, upon the whole of his evidence, be entirely justified in disregarding his "yes and no" answers and in reaching the conclusion that

his evidence as a whole is so contradictory to the categorical answers as to furnish reasonable ground for the belief that the real truth of the transaction is to be found in the facts and circumstances that destroy the probative value of his direct and unequivocal answers.

The court told the jury in the instructions that they could not find for appellee unless they believed that at the time of the accident Romiser was acting as the servant, agent or employe of Rosenberg and the Royal Milling Company, and the jury could not have found a verdict for appellee unless they so believed, and our reading of the evidence upon this feature of the case convinces us that the jury did not make any mistake in so finding.

The next question is, did the negligence of Romiser cause the accident? The testimony of Romiser in relating how the accident happened is as follows: "Q. How did you happen to let the horse get away that day? A. He just ran away. I did not let him. Q. You were at Ott's grocery store? A. Yes, sir. Q. You left him unhitched out in front? A. Yes, sir. Q. Left him standing loose in the street? A. Yes, sir. Q. And when you went out to get him he bolted? A. When I went out to get him? Q. Yes. A. No, sir. He bolted before I went out to get him or he would not have knocked me unconscious. Q. How did he happen to hit you? A. The horse was headed out Storey avenue. I was in Mr. Ott's grocery and he says, 'There goes your horse.' The minute I seen the horse running I started out, and I made a break at the lines, and as I grabbed at the lines I missed them and he knocked me unconscious, and that is all I know about him. Q. Did you have a hitching rein on your buggy? A. Yes, sir. Q. Why didn't you hitch him? A. No place there convenient to hitch."

Mr. Ott was asked: "Q. I will ask you where you were standing in your store at the time of this accident? A. Right inside the door. Q. Was Mr. Romiser standing near you? A. Right close by me. Q. Did you see this accident? A. Yes, I seen the horse running away. Q. Tell the jury just what you saw. A. The horse ran away, and Mr. Romiser ran after it, and when he got close to the buggy he must have got caught and throwed Mr. Romiser on the ground. That is all I seen."

This being all the evidence on the subject of the horse running away except that relating to the immediate collision, it is insisted by counsel for appellant that it is

not sufficient to show that Romiser was guilty of any actionable negligence. The evidence we have quoted merely shows that Romiser left the horse unhitched and unattended when he went into the store of Ott, and that the horse, for some unaccountable cause, ran off. There is no evidence as to the nature or habits of the horse or as to whether he was gentle or wild, docile or vicious; so that, unless it will be presumed that Romiser was negligent, or negligence may be inferred from the mere fact that the horse he left unattended and unhitched in the street ran off, there is no evidence of negligence in the record. If, however, this presumption or inference of negligence arises from the facts stated, then it was incumbent upon appellant, if he desired to show that Romiser was not negligent, to overcome this inference by evidence that the horse was gentle and his habits good, and that in the exercise of ordinary care it could not have been anticipated that he would become frghtened or run off.

In Palmer Transfer Co. v. Long, 140 Ky., 111, we had a case in many respects like this. The driver of a carriage for hire left his horses standing unattended in the street while he went into a house for the purpose of getting a passenger, and they became frightened and ran away, injuring Mrs. Long, an occupant of the carriage, who brought suit for damages. What caused the horses to run away did not appear, but we said:

"We think the jury was authorized to find that the driver was negligent in not keeping hold of the reins, or hitching his horses. Unless he knew that the horses were gentle and would stand without being held, it was his duty to have his hands on the reins so that he could control them, or to have hitched them. There is no evidence that the horses were gentle or safe, and the presumption from their conduct is that they were not."

In Robert Dennery v. Great Atlantic and Pacific Tea Co., 82 N. J. Law, 517, 39 L. R. A. (n. s.), 574, the court said: "If, therefore, a horse and wagon are found passing along a street with no one in charge, the absence of a driver gives rise to prima facie evidence of negligence on the part of the owner. The fact that the horse is running does not negative this presumption. That a horse, under such circumstances, finding itself without any one's guidance or control, should soon commence running is the result both of its nature and of its training. * * *

We think, therefore, that the unexplained presence upon a public highway of a team of runaway horses harnessed to a wagon, unattended by the owner or other person, raises a prima facie presumption of negligence on the part of the owner.'' To the same effect are: Corona Coal & Iron Co. v. White, 158 Ala., 627, 20 L. R. A. (n. s.), 958; Southworth v. Old Colony & Newport Ry Co., 105 Mass., 342, 7 Am. St. Rep., 528; Wasmer v. Delaware, Lackawana & Western R. R. Co., 80 N. Y., 212, 36 A. R., 608; Moulton v. Lewiston B. & B. St. Ry., 102 Me., 186, 10 L. R. A. (n. s.), 845; Ryan v. McIntosh, 17 A. & E. Ann. Cases, 806.

Many other authorities sustaining the proposition that it is prima facie evidence of negligence to leave a horse that runs away unhitched and unattended in a public street of a city might be referred to, but there is really no substantial difference of opinion in the cases upon this subject.

The general rule, and the one that we adopt as correct, is that when a horse, that has been left unhitched and unattended on the street of a city, runs away, thereby causing injury, the complaining party may rest his case on the prima facie inference of negligence arising from evidence that the horse was left unhitched and unattended, without offering any evidence as to the habits or qualities of the horse, or the cause that made him run away. We do not mean, however, to say that the mere fact that an unhitched or unattended horse runs away creates a conclusive presumption of negligence, or that the court should so instruct the jury as a matter of law. For, whether or not the owner introduces evidence tending to show the gentle and quiet habits of the horse, or such other pertinent facts as illustrate the exercise of care on his part in leaving him unattended and unhitched —although of course he may do this—or the case is closed without any evidence of the character or habits of the horse or evidence of care on the part of the owner, it is a question for the jury to say whether the owner was negligent in leaving the horse unattended and unhitched.

There are many horses of good habits and gentle disposition that may safely be left on the street unhitched and unattended, but whenever a horse so left runs off, then the owner takes the burden of showing the disposition and qualities of the horse and that in leaving him unhitched he acted with reasonable prudence, and it is

for the jury to say whether he was or was not guilty of negligence. Dolfinger v. Fishback, 12 Bush, 474.

This view of the law was presented in an instruction telling the jury that if they believed from the evidence that Romiser carelessly and negligently so managed and controlled or handled the horse attached to the vehicle as to suffer the horse to run away unattended by any one in charge, through the streets of Louisville, whereby he came in contact with the vehicle in which the plaintiff was riding, the law is for the plaintiff and that unless they so believed they should find for the defendant.

Another ground for reversal is that the damages awarded are excessive. The appellee, at the time he was injured, was a delicate man, under the treatment of Dr. Pope, and the evidence of Dr. Pope and the other witnesses tends to show that his condition was much aggravated by the accident, and that he sustained on account of this some permanent injury.

The assessment of damages is, we think, larger than it should be, and yet it cannot be said that it is so excessive as to appear to have been given under the influence of passion or prejudice. In many personal injury cases that are brought before us, the damages assessed are larger than we think should be awarded, but under the Code we have no authority to grant a new trial merely on the ground of excessive damages unless the damages appear to have been given under the influence of passion or prejudice; or, in other words, are so excessive as to be entirely out of proportion to the injury sustained. The question of the amount of damages that shall be recovered in this class of cases is primarily for the jury. They are as well, if not better, qualified than we are to arrive at a fair and just conclusion as to what amount of damage should be allowed, and, although we may not agree with their assessment, our uniform practice has been not to interfere with it unless for the causes stated; and hence we do not see our way clear to order a new trial on this ground.

Section 363 of the Civil Code of Practice provides that: "An action upon contract, wherein the summons has been served in due time, as provided in Section 102, upon part only of the defendants, shall stand for trial at the first term as to those so summoned, and may be continued as to the others for further proceedings. In other ordinary actions the plaintiff can only demand a trial at any term as to part of the defendants upon his

discontinuing his action on the first day of such term as to the others."

And as it appears that Rosenberg was the only defendant served with process or before the court, it is contended that the appellee was not entitled to a trial until all of the defendants were summoned or until he had discontinued his action as to those not summoned.

Under this section of the Code it would be error to force the defendant into trial in an ordinary action like this unless all of the defendants were before the court or the plaintiff discontinued his action as to those not before the court. Hedger v. Downs, 2 Met., 160; Baumeister v. Markham, 101 Ky., 122; Adkins v. Kendrick, 131 Ky., 779.

But this provision of the Code is intended for the protection and benefit of the defendant. He may, if he chooses to do so, object to a trial unless all the defendants are summoned or the plaintiff discontinues his action as to those not summoned, or he may waive his right to claim the benefit of this statute by failing to object to the trial in seasonable time, and if he does so fail to object, he cannot thereafter avail himself of this code provision either in the trial court or in this court. In this case the record shows that no motion for a continuance, or objection to the trial before the other defendants had been brought before the court, or the action as to them was discontinued, was made, and we may well assume that the capable and experienced counsel for appellant were not averse to going into trial at the time the case was called without either asking for a continuance or moving that the plaintiff discontinue his action as to the defendant not summoned.

Another objection is to the form of the judgment. Of course, the judgment is void as to Romiser and he is not complaining of it; nor do we perceive how the rights of Rosenberg are prejudicially affected by the fact that the judgment, in addition to going against him, went against "others, partners doing business under the firm name and style of Royal Milling Co." Rosenberg was the only party before the court, the only person who filed an answer or made defense, and it would be the merest trifling to say that the surplus matter in this judgment should render it void as to Rosenberg.

Upon the whole case, we perceive no substantial error to the prejudice of the appellant, and the judgment is affirmed.