## HALE *v.* HALE ET AL.

[No. 10,107. Filed April 2, 1920. Rehearing denied June 16, 1920. Transfer denied December 15, 1920.]

1. PRINCIPAL AND AGENT.—*Scope of Agency.—Determination.*—Where one claiming to be the beneficiary of a life insurance policy gave it to an agent to be delivered by him to insurer to secure a loan, the extent or scope of the agency and the authority of the agent is to be determined, not from a particular conversation, statement or declaration, but from the entire transaction between the several parties, the circumstances surrounding them, their relations to each other, and their conduct with reference to the subject-matter of the contract. p. 414.

2. PRINCIPAL AND AGENT.—*Agency.—Proof.—Competency of Agent as a Witness.*—An agent is always, if otherwise competent, a competent witness to establish the fact of agency. p. 415.

3. PRINCIPAL AND AGENT.—*Scope of Agency.—Evidence.—Letters Between Interested Parties.*—In an action involving the right to the proceeds of a life insurance policy, as between insured's divorced wife and his estate, where it was contended that the divorced wife, to whom insured had given the policy, had through her agent surrendered the policy for cash consideration under an agreement entitling insured to change the beneficiary, but the divorced wife denied the authority of her agent to make such agreement, *held* that letters passing between the various parties to the transaction were admissible on the issue of the scope of agent's authority. p. 415.

4. EVIDENCE.—*Regulations Governing Loan on Life Policy.—Parol Evidence.—Admissibility.*—Where a life insurance policy provided that under certain conditions a loan could be made on the policy "subject to the regulations of the company relative to policy loans," but such regulations were not set out, parol evidence as to the regulations, which did not vary the insurance contract, was competent. p. 415.

5. INSURANCE.—*Life Insurance.—Action on Policy.—Insolvency of Insured.—Admissibility of Evidence.*—In an action on a life policy involving the issue whether insured's divorced wife, to whom insured had given the policy at the time of its execution, surrendered the policy and her rights thereunder for a cash consideration paid to her by insured, testimony that insured left no estate except his insurance policy, was properly admitted in view of the contention that the divorced wife sur-

rendered the policy because of insured's insolvency and consequent inability to pay the premiums. p. 416.

6. INSURANCE.—*Life Insurance.*—*Surrender of Rights in Policy by Beneficiary.*—*Insured's Right to Change Beneficiary.*— Where insured's divorced wife, who had been designated as beneficiary in a life policy given her by insured, surrendered the policy and all her rights thereunder for a cash consideration, she could not thereafter complain, as being a fraud upon her rights, that insured changed the beneficiary of the policy, since she had surrendered her rights therein. p. 421.

7. PRINCIPAL AND AGENT.—*Unauthorized Contract Executed by Agent.*—*Ratification.*—*Retention of Consideration.*—Where insured's divorced wife, by her agent, for a cash consideration, surrendered to insured a life policy which he had given her, she, by retaining the cash consideration with full knowledge of the terms of the contract executed by the agent relative to the surrender of the policy, ratified the contract, if it had been made without authority, since she could not retain what she had received under such agreement and at the same time disaffirm it. p. 422.

8. PRINCIPAL AND AGENT.—*Unauthorized Acts of Agent.*—*Effect.*—*Ratification.*—Where an agent exceeds his authority, or where a person presumes to act as agent without having authority, ratification by the principal in the one case, or by the person for whom he was attempting to act in the other case, relates back to the time of the original act, and supplies the original want of authority, and in either case the principal is bound to the same extent as if the act had been done in the first instance by his previous authority. p. 422.

From Lake Superior Court; *Walter T. Hardy*, Judge.

Action by Elizabeth Hale against the Northwestern Mutual Life Insurance Company and others in which Mary Louise Hale was interpleaded and filed a cross-complaint. From a judgment for Mary Louise Hale upon her cross-complaint, plaintiff appeals. *Affirmed.*

*W. J. Whinery* and *H. E. Granger*, for appellant.

*Fred C. Crumpacker* and *Edwin H. Friedrich*, for appellees.

ENLOE, J.—On January 14, 1904, one William F. Hale procured from the Northwestern Mutual Life Insurance Company a policy in the sum of $2,000 upon his own

life, and caused said policy to be made payable, in case of his death, to Elizabeth Hale, his then wife. The policy was of the kind known as "twenty-year endowment," and was by said insured, upon its receipt from the company or shortly thereafter, turned over to the beneficiary therein named. In September, 1910, said William F. Hale and his said wife were, by decree of the Lake Circuit Court, duly and legally divorced. At the time of the granting of said divorce, and for some time prior thereto, the parties had resided in East Chicago, Indiana, but a short time after said divorce was granted said William F. Hale removed to the city of Muncie, Indiana, where he was married to appellee, Mary Louise Hale. The insured died at Muncie, Indiana April 22, 1914, intestate, and leaving surviving him his widow, Mary Louise Hale. The policy of insurance was at the date of his death in force and effect.

After the death of said insured, proof of death was duly made both by said widow and by said named beneficiary and, the insurance company declining to pay said policy to said named beneficiary, this suit was brought by appellant, naming said insurance company as defendant herein.

The company appeared, filed its petition asking that Mary Louise Hale, as administratrix of the estate of said William F. Hale, be made a party to the proceedings, which being done and she brought into court, said insurance company paid said money into court and an order of interpleader was entered in said cause as to the other parties thereto. The appellant then filed her amended complaint in three paragraphs. The first alleged the issuance of said policy; that appellant was named as beneficiary therein; that she was then the wife of said insured; the delivery of said policy, upon its receipt by said insured, to appellant under an oral agreement then and there made between said insured

and said appellant that said policy "was to be and should be kept, held and owned by plaintiff as her own individual property"; that thereafter a further agreement was made between appellant and said insured, whereby, in further consideration of appellant's rights in said policy, it was agreed between said parties that, if appellant would sign a deed to certain real estate in the city of East Chicago, thereby relinquishing her rights as wife of said insured in and to said real estate, he, said insured, would pay and continue to pay the premiums thereafter upon said policy of insurance, as the same should fall due, and that appellant should keep and retain said policy of insurance as her own separate and individual property; that appellant thereupon signed said deed to said property, and did thereafter continue to keep and hold said policy of insurance in her possession as her individual property until she delivered the same to said insurance company as security for a loan of $700 made by said insurance company to said insured; that in January, 1914, said insured came to appellant and informed her that the premium was then due upon said policy, and that he had no money with which to pay the same, that he desired to procure a loan of $700 from said insurance company upon said policy, and that if she, appellant, would deliver the possession of said policy to said insurance company to be held as security for said loan, he, the insured, would pay the premium then due on said policy out of said loan, and also would give to appellant $400 of the money so procured; that appellant thereupon delivered said policy to said insurance company as security for said loan, and said loan was thereupon made by said company to said insured, and that said loan has not been repaid; that said policy has never been assigned by appellant, and was still her property. This paragraph also contained averments concerning the death of said insured,

the furnishing proofs of his death, the non-payment of said policy by said company, and that one Mary Louise Hale, as administratrix of the estate of said William F. Hale was claiming an interest in the policy. Said administratrix was also made a party defendant to answer as to her interest in said policy.

The second paragraph contained all the material allegations of the first paragraph, as to the issuance of the said policy and its having been turned over to said company by appellant to be held as collateral for said loan, and this paragraph also contained an averment that, after said policy had been so issued to said insured, he, said insured, made a parol assignment thereof of all his right, title and interest therein to appellant, for the purpose of making financial provision for the welfare of said appellant, his then wife; that appellant on said day and at said time received and accepted said policy and thereafter held and kept the same until she delivered the same to said insurance company, as security for said loan of $700, in January, 1914.

The third paragraph alleged all the essential facts, as alleged in the first and second paragraphs concerning the issuance of said policy, etc., but alleged that the insured, immediately upon receipt of said policy, gave, transferred, and delivered to appellant all his right, title and interest in and to said policy as a gift to appellant, his then wife, and that appellant then and there received the possession of said policy from said insured, which possession she retained until its surrender as security for said loan.

Each paragraph contained a prayer for judgment for the amount due under said policy. A copy of said policy was set out as an exhibit, and made a part of each paragraph of complaint.

The appellee Mary Louise Hale filed answer to complaint of appellant in two paragraphs, the first being a

general denial. The second paragraph of answer alleged the issuing of the policy, and that at the time appellant and said William F. Hale were husband and wife, and continued to be such until September 20, 1910, on which day, by the judgment and decree of the Lake Circuit Court, they were duly and legally divorced; that at the time of said divorce, and in full settlement of the interest which appellant had in the property of said Hale, as his wife, said Hale conveyed to appellant real estate of great value in the city of East Chicago, and gave her money, and executed certain notes, payable at various dates thereafter, to said appellant; that the property so conveyed by said Hale to appellant was practically all the property owned by him, and that the appellant received the same in full settlement and discharge of any interest she had in the property of said Hale, and that she thereafter ceased to have any interest in or title to any property of said Hale; that appellant was named as beneficiary in said policy of insurance, but the right thereby acquired was by the provision of said policy made subject to the right of said Hale to change the beneficiary, subject to the various other provisions and conditions of said policy; that at the time of said divorce and marriage settlement appellant procured possession of said policy, and continued to retain possession of the same until it was surrendered to said Hale; that said Hale had never either given, assigned, or transferred said policy or its proceeds to said appellant; that in January, 1914, said Hale sought to procure a loan from said insurance company on said policy; that said policy provided that said company would, upon a satisfactory assignment of said policy to the company as collateral security, make a loan thereon, subject to the regulations of the company; that in order to procure said loan it was necessary that said policy be delivered to said company, to be held as collateral;

that he then sought to obtain possession of said policy from appellant, who then and there refused to surrender the same; that after some negotiations appellant did, in the month of January, 1914, through the First National Bank of East Chicago, surrender said policy to said Hale, in consideration of said Hale's promise to pay to said appellant the sum of $400 out of the loan, when the same was received; that when said loan was received said Hale paid to appellant said sum of $400 in full satisfaction and discharge of all her interest in said policy and the proceeds thereof. Said answer also contained averments as to the death of said Hale, proof thereof, her appointment as administratrix of his estate, etc.

To the appellee's second paragraph of answer the appellant filed reply in two paragraphs, the first being a general denial, and in the second paragraph she alleged the same facts as alleged in her complaint concerning the issuance of said policy, and its said assignment to appellant, and also alleged that the $400, which she received out of said loan, was received by her to be applied on the payment of a then existing indebtedness of said Hale to said appellant, which indebtedness was then due; that said policy was delivered to said bank to be by it delivered to said insurance company, as security for said loan so proposed to be made, and for no other purpose whatever; that at no time was there anything said concerning any proposed change in said policy, as to the beneficiary named therein; that, had appellant known that any change would be made, or attempted to be made, as to the beneficiary of said policy, she would not have surrendered the same; that said purported change in the beneficiary was a fraud upon the rights of appellant, and that she had disavowed and disaffirmed the same; that she had no notice or knowledge of such change having been made until after the

death of said Hale. This paragraph of reply also alleges that appellant was the owner of said policy, by verbal assignment to her by said Hale, in consideration of her signing certain deeds to real estate in East Chicago.

The appellee Mary Louise Hale also filed her cross-complaint in one paragraph, naming therein, as defendant, the appellant and said insurance company.

It alleged the issuing of said policy of insurance on January 14, 1904; the naming of appellant, the then wife of insured, as beneficiary therein; the divorce of appellant from her said husband in 1910; that said policy of insurance provided that the, insured, subject to the rights of any assignee, might nominate a beneficiary or beneficiaries, as provided in said policy, or might change the beneficiary during the continuance of the policy, by filing with the company a written request therefor, accompanied by the policy, such change to take effect upon the indorsement of the same upon the policy by the company; that in the month of January, 1914, said insured filed with said insurance company his written request that the beneficiary named in said policy be changed from the appellant to the "estate of the insured"; and that on February 5, 1914, in accordance with the provisions of said policy, and in compliance with said request, said insurance company changed the beneficiary named in said policy by indorsing upon the margin of said policy the following:

"Milwaukee, Wis. February 5th, 1914.
"By request of the insured, the beneficiary in this policy is hereby changed from Elizabeth Hale, Wife, to the executors, administrators or assigns of the insured.
"E. D. Jones, Assistant Secretary."

That on February 10, 1914, said insured had borrowed from said insurance company the sum of $700,

and had given his note therefor to said company to secure the payment of said note, and since said date said company has had the custody of said policy. There were further allegations concerning the death of said insured, notice thereof to the company, proof of death, and that the said policy was in full force and effect at the time of his death. There was a prayer for judgment for the amount due on said policy, less the amount of said loan.

To this cross-complaint the appellant answered in two paragraphs, the first being a general denial, and the second paragraph thereof alleged practically the same facts as theretofore alleged by her in her second paragraph of reply to the second paragraph of answer of appellee Hale. It was an attempt to allege facts which it was thought would show that said change in said beneficiary was, as to appellant, a fraud upon her rights, and therefore void. A reply in general denial to this paragraph of answer closed the issues, which were submitted to a jury for trial, resulting in a verdict for the appellee Mary Louise Hale, as administratrix, upon her cross-complaint, and that she was entitled to recover the sum of $1,735.53, being the full amount paid into court by said insurance company. There was judgment accordingly. The only error assigned is the action of the court in overruling the motion for a new trial. This motion contained fifty-nine specifications or reasons why said motion should be sustained.

The appellant in her brief filed herein has presented only questions relating to the admitting of evidence, the giving of certain instructions, the refusal to give other instructions, and to the sufficiency of the evidence to support the verdict.

We shall first notice the objections made to the admitting in evidence of certain exhibits. It is urged that the court erred in admitting in evidence exhibits 6, 7,

8, 9, 10, 11, 12, 13, 17, 19 20, 21 and 22, and each of them. Each and all of these exhibits had relation to the matter of the procuring of a loan from said insurance company on said policy, of the disposition of the funds thus derived, and of the agreement between the parties in interest, and of the relation of one William J. Funkey thereto.

As preliminary to the consideration of the questions presented as to these several exhibits, we will first notice the contention of the parties respectively, as to the relation of the witness William J. Funkey, who was then cashier of the First National Bank of East Chicago.

The appellant, testifying in her own behalf upon the trial of this cause, said that the policy in question was delivered to said Funkey, to be by him sent to the company at Milwaukee for her. Counsel for appellant admits the fact of agency, but insists that the agency was *special;* while on the other hand, the appellee insists that under the agreement between the insured and appellant, relative to the surrender of the said policy, and the procuring of said loan, the agency of said Funkey was a general agency, for the accomplishing of the particular object then in hand.

This is not a question of proving the *fact of agency;* the agency is admitted and the authorities cited by appellant relative to proving the *fact of agency* are

1. not in point. The fact of the agency being admitted, the extent or scope of the agency and authority of the agent is to be determined, not from a particular conversation, statement, or declaration, but from the entire transaction between the several parties, the circumstances surrounding them, their relation to each other, and their conduct with reference to the subject-matter of the contract. *Joyce Co.* v. *Rohan* (1907), 134 Iowa 12, 111 N. W. 319, 120 Am. St. 410; *Lindquist* v. *Dickson* (1906), 98 Minn. 369, 107 N. W. 958,

6 L. R. A. (N. S.) 729, 8 Ann. Cas. 1024; *Rosenberg v. Dahl* (1915), 162 Ky. 92, 172 S. W. 113, Ann. Cas: 1916E 1110; *State* v. *Bristol Sav. Bank* (1895), 108 Ala. 3, 18 South. 533, 54 Am. St. 141. An agent is

2-3. always, if otherwise competent, a competent witness to establish the fact of agency. Under the rules announced in these decisions—and there are many others—the court did not err in admitting said exhibits in evidence, each and all of which were letters passing between the various parties to, and were a part of the transaction in question.

What has been said of the witness Funkey also applies to the witness Leon J. Granger. It is admitted that he was the agent of appellant for the purpose of taking said policy to the bank and delivering the same to the witness Funkey, but it is denied by appellant that he had any other authority. The appellee, on the other hand, contends that the agency of Granger, who was a brother-in-law of appellant, was general, to accomplish the purpose in hand. The appellant testified that *she had no experience in business matters, and that she left the matter to Granger to do whatever was necessary to get the loan matter closed up.* Under the authorities, *supra,* the court did not err in admitting in evidence exhibits 2, 3, 4, 28A, 29A, 30, 31, and 32. Each and all of these several exhibits were letters and inclosures between said William F. Hale and said Leon J. Granger, as the agent of appellant. It is true that said Granger testified that he had exceeded his authority in the matter in hand, but that was his conclusion, by which the jury trying the case were not bound.

It is next urged that the court erred in permitting the witness Smith to testify concerning the regulations of said insurance company in the matter of mak-

4. ing loans upon policies. The provision of the policy in question was as follows:

"If this policy has not been extended as term insurance, the company will loan up to the amount indicated in the table below for the number of years the policy has been in full force, at not to exceed six per cent. annual interest, upon a satisfactory assignment of the policy to the company as collateral security, and *subject to the regulations of the company* relative to policy loans." (Our italics.)

The policy nowhere sets forth *these regulations*. The witness Smith testified that he was the district manager for said insurance company; that he knew what the regulations of said company were in January, 1914, as those regulations related to the making by said company of loans on its policies; that these regulations require that a policy payable to a named person be changed, and made payable to the estate of the insured, before a loan could be obtained thereon from said company. The evidence introduced did not vary or change the contract of insurance. It was properly admitted.

Complaint is also made that the court permitted appellee to testify that the insured, William F. Hale, her deceased husband, left no estate except his insurance policy. It was one of the theories of the appellee's case that the appellant, knowing the insolvency of said insured and that he could not pay the premium on said policy and it was, by reason thereof, liable to lapse, surrendered said policy, and all her rights thereunder, in consideration of the said payment to her of $400. The declaration of the insured to appellant that he could not pay the premium, and that the only way to keep said policy from lapsing was to procure a loan thereon, was already in evidence. The statement complained of above was simply corroborative of that statement of the insured concerning his financial situation and inability to pay the premium on said policy and

thereby prevent its lapsing, and the court did not err in admitting the same.

As appears from this record, the appellant, being called as a witness on her own behalf in rebuttal, in answer to a question by counsel for appellee, testified that: *"She left this matter of the procuring of the loan to her brother-in-law, Leon J. Granger, for him to do whatever was necessary to get the loan, and I never bothered any more about it."*

It further appears from this record that the first negotiations looking toward the procuring of said loan took place between the parties at East Chicago sometime in December, 1913, but no one contends that any agreement or understanding concerning said loan was fully reached or made at that time by or between the said parties. Thereafter, on January 6, 1914, the insured wrote a letter to said Leon J. Granger concerning the procuring of said loan; and it further appears that on January 8, 1914, said Granger wrote to said Hale concerning said matter, the letter being set forth in the record herein as "Defts. Exhibit No. 2." In said letter of January 8, is contained, among others, the following statement:

> "Let us play fair in the matter and it is barely possible that with your effort we may be able to make satisfactory arrangements, which will be of the most mutual benefit to both parties, and so that there shall be no misunderstanding in this matter I will herewith state plainly what our understanding was.
> "First: The $700.00 agreement has not been settled for and the insurance policy which we have at our command is worth $802.00 to you only. We propose to surrender this policy to you under the condition that you pay us $400.00 cash, for which you are to receive a receipt for $400.00 in part payment of the settlement for above $700.00 and the

insurance paper in turn will be surrendered to you or whoever you may desire.

"This covers our understanding thoroughly and when you make arrangements to do this we are ready to do business with you. * * *"

It further appears from this record that on January 9, 1914, the insured wrote a letter, directed to Leon J. Granger (defendant's exhibit 29A) in which are the following statements:

"Yours of yesterday reached me this p.m. * * * I don't see that there is but little difference in our understanding in this matter. * * * I gather from your letter that you do not expect to turn over policy until money is paid,—to save further loss of time, no loan can be made unless policy is sent in with application for loan and I understood when there that policy would not be given me and you suggested that it be put in escrow, to which I agreed, and my letter to bank states that policy is to be turned over to me only on payment of $400.00. I am willing to trust the bank and explained personally to Mr. Funkey our agreement and I think he understands the full nature of it, unless the policy is turned over to bank to send in with application for loan. I can do no more toward making this loan and I am as anxious as anyone concerned to get it through as early as possible and have gone as far as I can in the matter. * *. * Hoping that you will file policy with the bank at once so there will be no further delay and that we may get the matter adjusted at an early date, and you readily see I can do no more to hurry matters until policy is filed, on notice of loan being granted I will at once arrange to pay the $400.00 as agreed and hope you will carry out balance of agreement."

On January 22, 1914, said Granger wrote a letter to said insured (defendant's exhibit No. 4) in which appears, among others, the following statements:

"It has been my object to straighten this matter out along business lines and agreeable to both parties as far as possible.

"Referring to the dropping of the case which is now in court, I wish to positively state that this case will not be dropped until we have received the $400.00 in question and then not on any agreement which involves the paying of the $400.00 under the proviso that the case be dropped. * * * We therefore propose to give you a receipt for the payment of $400.00 to be applied on amount of enclosed statement if this is satisfactory to you.

"Kindly advise Funkey of same in a letter in duplicate so that I may have and keep a copy of same. This will be so arranged that on the surrender of the insurance policy for the securing of a loan we are to receive the $400.00 of the loan money and in turn will give you a receipt for $400.00 in part payment of the back taxes and assessments as provided for by your signed agreement. * * *

"Thanking you very kindly in advance for reply,
"We remain, yours very truly."

On January 25, 1914, the insured wrote said Granger as follows (defendant's exhibit 31):

"Dear Sir: Yours of the 22nd reached me last p.m. and contents noted. I am today writing Mr. Funkey of the bank the following instructions.

" 'Upon surrender of the insurance policy to the bank and the completion of the loan, the bank to pay Mrs. Hale or her representative the sum of $400.00 out of said loan and take a receipt for same, the balance of said loan to be turned over to me, along with the receipt and insurance policy.'

"Trusting this will meet with your approval, I am

"Yours very truly."

On the same date said insured, agreeable to the request made by said Granger in letter of January 22, 1914, to insured, wrote to said William J. Funkey, cashier of First National Bank, East Chicago (defendant's exhibit 22) a letter as follows:

"I received yesterday from Mr. Leon J. Granger, who is representing Mrs. Hale of East Chicago, Ind., a letter outlining the manner in which they wish the $400.00 on loan applied. I am writing

Mr. Granger that I will comply with their request. There is or was some back street assessments paid by them on which they want to apply this $400.00 they agreeing to give receipt for the amount on these assessments to me.

"Mr. Granger asks me to write you advising you on the disposition of the loan, the receipt for same, etc. ⸱I have used these words in his letter, same being my agreement with them and to govern you in disposition of same. 'Upon the surrender of the insurance policy to the bank and the completion of the loan, the bank to pay to Mrs. Hale or her representative the sum of $400.00 out of said loan and take receipt for same, the balance of said loan to be turned over to me along with the receipt and insurance policy.'

"Hoping this will clear matters so that there will be no further delay and not cause any more correspondence,

"With kindest personal regards, I am,

"Very truly yours."

It further appears that shortly thereafter said Granger delivered to said Funkey the policy in question, and was given a receipt therefor as follows (defendant's exhibit 25):

"This is to certify that the signer, Mr. Funkey, Cashier of the First National Bank of East Chicago, Indiana, have this day received Northwestern Mutual Life Insurance Co. policy Number 570666, issued to William F. Hale and Mrs. Elizabeth Hale, beneficiary, in accordance with the following copied from Mr. Hale's letter of January 25, 'Upon the surrender of the insurance policy to the bank and the completion of the loan, the bank to pay Mrs. Hale or her representative the sum of $400.00 out of said loan and take a receipt for same, the balance of said loan to be turned over to me along with the receipt and insurance policy.'

"First National Bank by William J. Funkey, Jr., Cashier."

It further appears that, said loan having been consummated, the $400 mentioned in said agreement was

paid to Elizabeth Hale, and she gave her receipt therefor as follows:

"East Chicago, Indiana, Feb. 13, 1914.
"Received of William F. Hale through First National Bank of East Chicago, Four Hundred and no/100 Dollars as per agreement for the delivery to him of Northwestern Mutual Life Insr. policy. Money to apply on street assessments paid by Elizabeth Hale.

"Elizabeth Hale."

From the foregoing pleadings, the testimony offered on the trial, the instructions tendered, and from the brief of appellant filed in this court, it clearly appears that she founds her claim to the proceeds of the policy in question upon two propositions, viz.: (1) That the policy was, at a time just prior to the making of said loan, in January, 1914, her absolute property; (2) that any agreement for the surrender of said policy and a change of the beneficiary named therein was unauthorized by her, and therefore a fraud upon her rights.

It will be noted that the receipt which she signed when she received the said $400 contained the following language: *"As per agreement for the delivery to him* of the Northwestern Mutual Life Insr. Co. policy."  Here she had notice that an agreement had been made by which said policy was to be surrendered to said insured, Hale, yet she signed the receipt and received the money, according to the provisions of said agreement.  It will also be noted that in appellant's second paragraph of reply to appellee's second paragraph of answer she avers that, had she known that any change was to be made in said policy, she would not have surrendered the same; that such change "was a fraud upon her rights, and that she had disavowed and disaffirmed the same."  Having agreed, in consideration of the payment to her of $400, to sur-

render her rights in this policy, it is difficult to see how any change in the policy after she had received her said money, and the agreement in that behalf fully consummated, could be a "fraud upon her rights," for she then had no rights in and to said policy. If there was any fraud in any way upon her rights, it was committed by her agent, Granger, in making the above agreement; and while she says that she had "disavowed and disaffirmed" the same, yet she at all times kept the $400 received in pursuance of said agreement.

This, after the knowledge of the contract was brought home to her, was of itself a ratification of the contract made by said Granger in her behalf. Where an agent exceeds his authority, or where a person presumes to act as agent without having any authority so to do, yet if his principal in the one case, or the person for whom he was attempting to act in the other case, afterwards ratifies such act, such ratification relates back to the time of the original act and supplies the original want of authority. *Persons* v. *McKibben* (1854), 5 Ind. 261, 61 Am. Dec. 85. In such case the principal is bound to the same extent as if the act had been done in the first instance by his previous authority. *Henry* v. *Heeb* (1888), 114, Ind. 275, 16 N. E. 606, 5 Am. St. 613. Ratification is the cure for "want of authorization," and when it takes place the act stands as an authorized one from the beginning.

Appellant executed a receipt for the $400 paid to her by the bank, in which she acknowledged the receipt of said money, "as per agreement" for the delivery *to him* (the deceased) of said policy; this was notice to her that an agreement in that behalf had been made; and thereafter on gaining full knowledge of the terms of said agreement, kept what she had received under said agreement, and says that she dis-

affirmed and repudiated the same. This she could not do. In *Adams Express Co.* v. *Carnahan* (1902), 29 Ind. App. 606, 63 N. E. 245, 64 N. E. 647, 94 Am. St. 279, it was said: "The general rule as to agency is that the principal who adopts the act of one professing to act for him must adopt it *in toto,* and will not be permitted to claim the benefit arising therefrom, and at the same time to repudiate the burden thereof." In *Rackemann* v. *Riverbank Improvement Co.* (1896), 167 Mass. 1, 44 N. E. 990, 57 Am. St. 427, it was said: "The plaintiffs agreed to take the land with the promise. It turns out that they got the land without the promise. The defendant cannot retain what is beneficial in the transaction, while disclaiming what is onerous."

In *Meyerhoff* v. *Daniels* (1896), 173 Pa. 555, 34 Atl. 298, 51 Am. St. 782, it was said: "That the defendant was responsible for the acts and declarations of her agent under whose contract of purchase she received the goods is too plain for argument, and is not at all disputed. Whether the agent had authority to make the representations in question or not, is quite immaterial. The test of liability is that the goods were received by the defendant under the contract made by the agent." In *Wheeler, etc., Co.* v. *Aughey* (1891), 144 Pa. 398, 22 Atl. 667, 27 Am. St. 638, it was said: "For the purpose of obtaining the notes, Landis most certainly acted as the representative of the plaintiffs, and they conclusively accepted the fruits of his act. They cannot do this without being subject to the conditions upon which he obtained the notes, whether he had authority or not to make or agree to those conditions, is too well settled to admit of any doubt."

Under these authorities, and many more could be cited, we must hold that, under the circumstances of this case, the appellant, having received the $400 under a contract by the terms of which said policy of insurance

was to be surrendered to said Hale, and having after she learned of said conditions in said contract still kept and retained said money so paid, thereby ratified the acts of her said agent, Granger, in that behalf, and said contract is fully binding upon her.

In this view of the case, the instructions complained of by appellant as being erroneously refused became of no consequence, they being addressed to matters which could not control the correct decision of this case; neither do we find that the court committed any reversible error in giving any of the instructions of which appellant complains. Upon this record there can be no question about the right result having been reached. The verdict of the jury is sustained by the evidence, and the judgment is affirmed.